A. L. MAXWELL v. JOHN H. TODD et al.

*Mining Leases—Forfeiture by Non-user—Estoppel.* ·

1. Where a mining lease provides for the payment to lessors of a part of the net proceeds of minerals taken from the lands, but contains no stipulation for a forfeiture through failure to open and work the mines, the law will construe the contract as if such a stipulation had been expressly written therein, and will adjudge such lease to be forfeited if, within a reasonable time, the lessee fails to carry out the purpose of the lease.

2. Where lessors of mining privileges were in possession of the land covered by the lease at the date thereof and continued in possession, and the lease became forfeited by the non-user and abandonment according to the terms of the contract as construed by the law, no re-entry by lessors was practicable or necessary, and they or their grantees had a right, without demand or notice to the lessees, after such forfeiture, to resist the entry of the lessees for mining purposes.

3. Where an employee or servant of lessees of mining rights works for them in exploring the minerals on the land, and afterwards acquires from the lessors the mineral rights on the land, he is not estopped from denying the title of his former employers to such mineral rights, the lease thereof having been forfeited by non-user. ·

CIVIL ACTION, tried at Spring Term, 1892 of CALDWELL Superior Court, before *Graves, J.*

Both parties claimed under the Graggs. The leases introduced by plaintiffs and under which they claimed are as follows:

*Lease from Gragg to Maxwell & Stewart.*—"This indenture, made this the 19th day of December, 1879, between Madison Gragg and Caroline Gragg, his wife, and Elizabeth Gragg, his mother, of the county of Caldwell and State of North Carolina, of the first part, and A. L. Maxwell and John W. Stewart, of the county of Knox and State of Tennessee, of the second part,

"Witnesseth, that for and in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, and such further considerations as are hereafter mentioned and covenants hereinafter contained, hereby leases, and by these presents does grant and convey to the said parties of the second part, their heirs, executors, administrators and assigns, the following described piece or tract of land, situated in Globe Township, Caldwell county, State of North Carolina, bounded and described as follows:

"Beginning on a chestnut oak, running north to Harrison Gragg's and Solomon Dugger's line; thence to the White line; thence with said line to the line of the old Gragg tract to the beginning, containing three hundred more or less acres, for the purposes of boring, mining and operating for gold, silver and such other minerals as may exist therein, or be found for the period and term of ninety-nine years; the said second parties to have the exclusive right to explore the said tract of land, to bore, work and take from the same any gold, silver or all other minerals therein contained for the term aforesaid, and to have for themselves, their heirs and assigns the right of way over said tract of land for the purposes of exploring, working or developing

any part of said tract of land for the purposes aforesaid, and to have the right of taking sufficient timber for the purpose of conducting said exploring and mining operations, and the right to erect any buildings on said premises as they may desire for any purpose whatsoever, and to have the right of way to any well, spring or water-course that it may be necessary to use in said mining operations; and the said second parties may have the right to remove all engines, tools, machinery and buildings that they may put on said premises. And it is further agreed that the said parties have the right to sublease said land for the purposes above mentioned, with all the rights and privileges herein granted to the parties of the second part, and the said parties of the second part, their heirs, executors, administrators or assigns, hereby agree to pay to the parties of the first part, their administrators, executors, heirs or assigns, the one-tenth part of all the net proceeds of any minerals taken from said land.

" In testimony whereof," etc.

*Contract.*—"This agreement, made this 24th March, 1866, and entered into between Elizabeth Gragg and Madison Gragg, of the county and State aforesaid, of the first part, and A. E. Haigler, of the county and State aforesaid, of the second part, Witnesseth, that whereas we, Elizabeth Gragg and Madison Gragg, have this day bargained and leased to the said A. E. Haigler the mineral interest in a certain tract of land in Caldwell county and State aforesaid for twenty-five years, with the privilege of wood and water, for mining purposes, containing 295 acres, lying on the waters of Wilson Creek, beginning on a chestnut oak, Edmund Gragg's corner, and running with the calls of the State grant, which is registered in Book D, page 554, and warrant said lease against all other persons. And the said A. E. Haigler agrees, on his part, to pay to Elizabeth Gragg and

Madison Gragg the tenth of the gold or other minerals that the said Haigler may obtain from said lands; and further agrees to have said mine tested during the year 1866, if said mine should justify, to go to working said mine. Should the said Haigler fail to comply with this contract he forfeits this lease. The said Haigler to have possession from this date.

" Witness our hands and seals, the day and date above written. The toll to be paid as it is made."

The defendants claimed under a deed from Madison Gragg and wife, Caroline, and Margaret Gragg to John W. Todd, Charles H. Brown and Alfred Wortman, whereby the grantors conveyed, with general warranty, all their right, title and interest in and to all the minerals on the *locus*, with the usual rights and privileges of roads, water, etc., necessary for operating mines, etc.

The issues submitted and the responses thereto were as follows:

1. Are the plaintiffs the owners of the mines and mineral interest in the lands in controversy? Answer. No.

2. Are the defendants in the wrongful possession thereof? A. No.

3. What damages have the plaintiffs sustained by reason of the wrongful possession? A. None.

4. Has the lease described in the answer as executed to Maxwell and Stewart become void by reason of their failure to perform the conditions and stipulations contained in said lease, as stated in answer? A. Yes.

5. Has the lease described in the answer to A. E. Haigler expired or become void by reason of his failure to perform its conditions and stipulations, as alleged in the answer? A. Yes.

6. Are the defendants owners of the lands covered by their deed, as set forth in the answer? A. Yes.

The Court instructed the jury as follows:

"The construction of the writing is a matter for the Court. The contract between Graggs and plaintiffs is not a conveyance of the entire estate, but a lease for a term of years— for ninety-nine years. The conditions of the contract are the express stipulations set out in the written contract, and in addition to such written stipulated conditions contained in the contract the law implies other conditions. In this contract the plaintiffs, the lessees, set out the purpose for which this contract was made—that is, for the purpose of testing, developing and operating for minerals. (The contract was here read to the jury by the Court). This imposed upon the lessees the duty of developing, testing and operating for minerals in a reasonable time, as such mines are usually worked, with ordinary diligence under surrounding circumstances, not simply for their own profit and advantage, but to·the end that the lessors should have their tenth of the clear profits.. In this case, if the plaintiffs obtained their lease in 1879, went on the land and developed and tested the mine by 1883, and then if they found the mine valuable, and if the lessors then assisted them in removing all clouds on the title, and after that the lessees failed and neglected to work the mine so as to give the lessors the benefit of their part of the clear profits, then the plaintiffs, these lessees, did not work or operate the mine or sublet to others in reasonable time. The lessees, the plaintiffs, would have but their rights, and the lessors might elect to declare the lease defeated by the failure of plaintiffs to perform the conditions the law attaches to the contract. The privilege conferred on the lessees to sublet was to·sublet for the purposes for which the mine was leased to them, and did not authorize them to hold the property for an unreasonable time to sublet to others, or to organize companies to work such mine. They must get to work in reasonable

time. It is true that courts of equity, in certain cases, relieve against the forfeiture which, according to the rigid rules of common law, becomes unforeseen, had to perform a condition subsequent; but such cases were limited to those cases where the compensation can be made certain; but when it depends on unliquidated and uncertain damages the rule will not apply. It does not arise in this case. A lessee cannot deny the title of his landlord; and he cannot, while in the occupation as a tenant, acquire and set up a title adverse to his landlord until he shall have first surrendered to his landlord, but the rule does not apply to a servant merely. Here, if there had been a renting or a leasing to Wortman by the plaintiffs, he would be estopped. If he was not a lessee, and was merely employed to work the mines for the plaintiffs, although he may have been paid by them for his services, and had under him hands, machinery and implements furnished and paid for by plaintiffs, still Wortman would not be estopped from acquiring a right adverse to that of plaintiffs. Reasonable time is usually deemed a question for the Court. I understood the counsel to agree that in this case it is a mixed question of law and fact. It becomes your duty, then, in this case to ascertain what the facts are, and apply to the facts found the law as laid down by the Court. If the plaintiffs developed and tested the mine, and with the assistance of the lessors had all clouds removed from the title, and found the mine valuable and ore fit to be worked with profit in May, 1883, and failed to work it or sublet it to be worked up until 1889, or for a period of five years, this did not comply with the conditions the law imposed on them. You will observe I have told you they were only bound to work, as such mines are worked, with ordinary diligence and care. If the plaintiffs did not so fail to perform obligations imposed on them, then their right under the lease was not forfeited."

The plaintiffs' counsel, at the conclusion of the evidence, requested the Court, in writing, to give the following special instructions :

1. That the lease from the Graggs to the plaintiffs, dated the 19th of December, 1879, conveyed all the mines and minerals on said land, with the exclusive right to occupy said land to search for mines and minerals, and to sublet the same to the plaintiffs.

2. That the contract of lease to the plaintiffs gave the plaintiffs no right to surrender their term at any period within ninety-nine years and end their obligation to the Graggs, their lessors, to pay rent under the lease.

3. That the lessors of the plaintiffs, the Graggs, had the right to receive any sum from the plaintiffs as rent, or for any failure to develop the mine, if such existed, and as long as said grantors remained inactive and did not make an actual demand of the plaintiffs before entry and sale to the defendants for the land, the said contract remained in full force.

4. If a lease be made reserving rent, and that for the non-payment the lessors may re-enter, there must be an actual demand made previous to the entry, otherwise it is tortious, because such condition of re-entry is in derogation of the grant, and the estate at law being once defeated cannot be restored by any subsequent payment.

5. With respect to conditions precedent and subsequent the prevailing distinction is to relieve against conditions subsequent in all cases where compensation can be made.

6. That if Wortman, the defendant, was employed by the plaintiffs to assist in testing and exploring this Gragg property, and represented to the plaintiffs that he was acting under their authority and under their lease, that although he may have then taken a lease from the Graggs subsequent to the plaintiffs' lease, he could not now set up any claim

to the land that would avail him until after he surrendered possession to the plaintiffs.

7. That if Wortman represented to Maxwell that all he was doing was to protect his interest, and this led Maxwell to believe that he, Wortman, was assisting him to develop the mine, he cannot now be heard to say that what he did was not for Maxwell's benefit, although his real motive might have been only to allure St. Louis capitalists, as he swore.

8. If Wortman, at the time he took his lease from the Graggs, was in the employment of the plaintiffs, and represented to them that what he was doing was for their benefit and to assist them in developing the mine, he is estopped to deny the plaintiffs' title.

His Honor refused the third, fourth, sixth, seventh and eighth special instructions, and refused the first, second and fifth as asked, except so far as they are mentioned in his charge, and the plaintiffs excepted.

There was a verdict on the issues, as indicated by the answers thereto, for the defendants. Rule for a new trial by the plaintiffs, assigning for error—

1. The refusal of the Judge to give special instructions Nos. 1, 2, 3, 4, 5, 6, 7 and 8 as requested.

2. To the charge as given, in that it failed to instruct the jury that, from all the evidence, the plaintiffs were entitled to recover.

3. In that the said charge instructed the jury if the plaintiffs, in 1883, discovered that the minerals were of sufficient value to justify working the mine, and stopped work to get the Haigler lease removed, and the Graggs assisted them to remove the Haigler lease, and they afterwards, and before the conveyance to the defendants by the Graggs, failed to work the mine so as to produce a profit, so that the Graggs could get their rent, that this failure on their part operated

as a forfeiture of their rights in the mines and minerals in said lands.

4. That said charge instructed the jury that the said lease required of the plaintiffs more than exploring, boring, excavating and testing the mines and minerals; that they must show that the mines had been operated, that is, worked, and if they delayed for the period of five years to work the mines they forfeited their rights.

5. In that said charge instructed the jury that, in some cases in which compensation for the breach of conditions subsequent or implied covenants could be made, a failure to comply with all the conditions and implied covenants would not invalidate the conveyance, but that this was not a case in which compensation could be made.

Judgment on the verdict for the defendants. Appeal by the plaintiffs.

*Messrs. Wakefield & Newland* and *R. Z. Linney,* for plaintiffs (appellants).
*Messrs. G. N. Folk* and *W. B. Councill,* for defendants.

BURWELL, J.: The plaintiffs claim the exclusive right to all mines and minerals in the land described in the complaint under and by virtue of a mining lease made to them by Elizabeth Gragg and others on the 19th day of December, 1879, for the term of ninety-nine years, and also under and by virtue of a mining lease made by said Elizabeth Gragg and another to one Haigler, dated March 24, 1866, for the period of twenty-five years, the latter lease having been, as they claim, assigned to them in effect with the assent and concurrence of the lessors.

The defendants claim all the mines and minerals and all mining rights in said land under and by virtue of a deed made to them on May 27, 1890, by the plaintiffs' lessors for the consideration of $2,000.

Since both plaintiffs and defendants claim under the same parties (the Graggs) the plaintiffs, their titles being anterior, are entitled to recover unless the leases mentioned above have expired or have been forfeited or surrendered, and have thus become void.

The consideration for the lease to plaintiffs was one dollar and their agreement to pay to the lessors, their administrators, executors, heirs or assigns, one-tenth part of all the net proceeds of any minerals taken from said land, but there is in it no stipulation that a failure to open and work the mines shall cause a forfeiture. But the construction put upon their contract by the law is the same as if such a stipulation had been expressly written therein, for, as was said in *Conrad* v. *Morehead*, 89 N. C., 31, of a similar lease: "It would be unjust and unreasonable, and contravene the nature and spirit of the lease, to allow the lessee to continue to hold his term a considerable length of time without making any effort at all to mine for gold or other metals. Such a construction of the rights of the parties would enable him to prevent the lessor from getting hi tolls under the express covenant to pay the same, and deprive him of all opportunity to work the mine himself or permit others to do so. The law does not tolerate such practical absurdity; nor will it permit the possibility of such injustice."

His Honor construed the contract under consideration according to the principle announced in the case cited above, and told the jury that a failure on the part of the lessees to work the mines for five years would cause a forfeiture of which the lessors might take advantage, if they saw fit so to do. Certainly the plaintiffs have no right to complain that the period fixed by his Honor (five years) was too short. No re-entry by lessors was practicable or necessary. They were in possession of the land at the date of the lease,

and thereafter continued in possession, that possession being subject to the mining rights of the plaintiffs until those rights were lost to them by non-user and abandonment according to the terms of the contract as construed by the law. They were presumed to know what meaning the law put upon the expressed terms of that contract, and that, without any claim or demand or notice, the lessors, after such non-user for an unreasonable time, could resist their entry for mining purposes, their rights having been forfeited. And if the lessors could resist an entry by plaintiffs certainly the defendants, the grantees of those lessors, may avail themselves of the forfeiture and resist any interference by plaintiffs with the rights they have purchased, unless their relation to the plaintiffs was such as estops them from asserting an adverse title; and his Honor's instructions to the jury in regard to such estoppel were correct.

The jury having found the fourth and fifth issues in defendant's favor—that is, that the leases under which plaintiffs claim are void, and this, as we have seen, under proper instructions, the plaintiffs cannot recover, and the judgment must be affirmed.

We deem it unnecessary to consider separately each exception to the charge made by plaintiffs as what has been said above, which is indeed but a reiteration of the principle announced in *Conrad* v. *Morehead, supra,* seems to meet all their objections. We note that some of the exceptions seem not applicable to the charge of his Honor as set out in the case.

There is no error and the judgment is

Affirmed.