Island Coal Co. v. Combs.

THE ISLAND COAL COMPANY *v.* COMBS ET AL.

[No. 18,566.    Filed April 5, 1899.]

QUIETING TITLE.—*Right to Sue.— Special Finding.*— A finding that F. had been the owner in fee of the lands in controversy, and had conveyed such lands to C., and that C. had died, leaving plaintiffs her only heirs at law, is sufficient to support an action to quiet title against one who claims title through F.   *pp. 380-386.*

SAME.—*Right to Sue.—Lease.*—A suit to quiet title may be maintained against one who claims title under a lease from the grantor of plaintiffs' ancestor.   *pp. 385, 386.*

LANDLORD AND TENANT.—*Lease for Coal Mining Purposes.—Implied Obligations to Begin Mining Within a Reasonable Time.*—Where in a lease of lands for coal purposes the lessee agrees to pay to the lessor a royalty or' rent, which depends on the amount of coal mined, the lessee thereby, in the absence of any provisions to the contrary, impliedly obligates himself to begin the mining of the coal within a reasonable time after the execution of the lease.   *p. 387.*

SAME.—*Lease for Coal Mining Purposes.—Forfeiture.*—A provision in a lease of lands for coal purposes, under penalty of forfeiture, that within a specified time the necessary work for developing the coal interests in the lands leased, by opening shafts so that the underlying coal may be removed and transported to market, requires that the mining of coal should be commenced within the time specified, and that the construction and equipment of shafts is not a sufficient compliance with the terms of the lease so as to prevent a forfeiture.   *pp. 388, 389.*

SAME.— *Breach of Condition in Lease.— Forfeiture.— Demand.— Waiver.*—A provision in a lease, that the lessors, upon the violation of a certain condition therein, may, without demand, notice or act, reënter the premises, is an express waiver upon the part of the lessee of all demand or notice upon a breach of the condition of forfeiture.   *pp. 390, 391.*

SAME.— *Breach of Condition in ·Lease.— Forfeiture.— Demand.—* Where the owner of leased premises is in possession, such owner is not required to make demand for possession on a forfeiture of the lease.   *p. 391.*

SAME.—*Breach of Condition of Lease.—Acquiescence of Lessor.— Waiver.*—Mere acquiescence of the lessor is not to be construed as a waiver of a breach of a condition of forfeiture.   *p. 391.*

From the Daviess Circuit Court.   *Affirmed.*

*Charles E. Barrett, Gardiner & Gardiner, B. K. Elliott* and *W. F. Elliott,* for appellant.

*H. W. Letsinger, Davis & Moffett, Bilheimer & Downey, T. J. Terhune* and *S. R. Artman,* for appellees.

JORDAN, J.—This action was commenced on the 27th day of February, 1896, by the appellees, in the Greene Circuit Court, to quiet title to certain described real estate, upon which appellant, it appears, claimed to hold a coal lease for a period of ninety-nine years, beginning November 10, 1883. The complaint is in the ordinary and general form, and, after alleging that the plaintiffs are the owners in fee simple, as tenants in common, of the land described therein, it is further averred that the defendant is asserting an unfounded interest or right in and to said lands, which is adverse to plaintiffs' claim and title, and that said asserted claim or right casts a cloud upon plaintiffs' title, etc.

The issues were joined between the parties and, on motion, the cause was venued to the Daviess Circuit Court. Upon the trial the court found the facts specially and stated its conclusions of law thereon in favor of appellees, and, over appellant's motion for a new trial, rendered judgment quieting the title of appellees in and to the real estate described in the complaint. The material questions arise upon the court's conclusions of law upon the special finding. Omitting the formal parts of this finding, the following facts are thereby disclosed:

First. On November 10, 1883, Mary A. Fainot, of Greene county, Indiana, was the owner in fee simple, and in possession, of the real estate in controversy.

Second. On that day, she, together with her husband, executed to Samuel N. Yeoman, of Fayette county, Ohio, a certain lease. Omitting the formal parts, and some other provisions thereof not material in any way to the questions herein involved, said lease may be read as follows: "That said parties of the first part, in consideration of the rents, roy-

alties, and covenants hereinafter contained, and by the said party of the second part and his assigns to be paid and performed, do hereby grant, demise, and lease to the said party of the second part, his executors, administrators, and assigns, the right to mine all the mineral, stone, coal, the minerals and clays, underlying the surface of the following described premises, to wit: Situate in the township of Stockton, in the county of Greene, in the State of Indiana, viz: Being the south part of the southwest quarter of section 25, containing 12 acres, more or less, and the north part of the northwest quarter of the northwest quarter of section 36, containing 18 acres, all in town 7 north, of range 7 west, (and other lands) together with so much of the surface of said above described premises as may be necessary for the opening of a mine for the purpose of mining, removing and disposing of the coal, erecting and maintaining the necessary buildings    *    *    * and such other    *    *    * appurtenances as may be necessary or convenient in the prosecution of the business of mining, removing and trafficing in coal.   To have and hold the same in manner and form as aforesaid, with the appurtenances unto the said Samuel N. Yeoman, his executors, administrators and assigns from the 10th day of November, 1883, for and during the full term of ninety-nine years next ensuing, and fully to be completed and ended, yielding and paying quarterly therefor during the said term, a royalty of ten cents per ton for each and every ton of merchantable lump coal that may be mined or removed from said premises. Provided, however, that if said royalty (rent) or any part thereof shall remain unpaid for one year after it shall become due, and the same shall become due on the 15th day of the month succeeding the end of the quarter after the coal is shipped and with demand made therefor, or if the said Samuel N. Yeoman shall fail within one year from the date of this lease to cause to be constructed a standard gauge railroad from the Indianapolis and Vincennes railroad to the township of Stockton to within one-half mile distance of the coal

mine of John F. Griffin, now located and in operation in said Stockton township, county of Greene, State of Indiana, *or shall fail for eighteen months from the date hereof to commence the necessary work for developing the coal interest herein leased by opening coal shafts on the above leased premises or upon other and adjacent premises which he has in like manner leased, by, through or from which said coal underlying said premises can be mined or removed, or mines so to be opened as aforesaid, so that the coal underlying said premises may be mined, removed and transported to market, or shall mine the coal within one hundred lineal feet of the dwelling house upon said premises, it shall be lawful for said lessors, their heirs or assigns, without further notice, demand or act, unto said premises to re-enter, and the same to have again, repossess and enjoy as in their first and former estate; and thereupon this lease and the terms thereof and everything therein contained on the said lessors' behalf to be done and performed shall cease, determine and be utterly void.* [Our italics.] * * * And said lessee for himself, his executors, administrators and assigns, doth covenant and agree with the said lessors, their heirs and assigns as follows: That said lessee will pay said royalty in manner aforesaid; that he will construct or cause to be constructed the railroad as aforesaid in the manner, time, and location, as aforesaid; that he will commence the development of the coal underlying the said premises in manner and form within the time aforesaid. * * * And the said lessors for themselves and their heirs, executors, administrators and assigns covenant and agree with the said lessee, his executors, administrators and assigns that the said lessee, paying the royalty and keeping the covenants of this lease on his part to be kept shall lawfully and quietly occupy and enjoy said premises, in manner and form for the purposes herein written or intended to be written, during said term, without any molestation by said lessors, or their heirs or any person or persons claiming under them. * * * It is mutually agreed and understood be-

tween the parties of the first and second parts that the loca-
tion and construction of a standard gauge railroad within the
time and on the route herein set forth shall be deemed and
taken as a fulfilment of the conditions and covenants of Sam-
uel N. Yeoman to construct and secure the construction of a
railroad. And the parties of the first part further covenant
and agree with said party of the second part, his heirs, exec-
utors, administrators and assigns that if at any time within
eighteen months from this date the said party of the second
part, his executors, administrators or assigns, shall pay to the
said parties of the first part, their heirs or assigns, the sum
of $35 per acre for the premises herein described, then the
said parties of the first part bind themselves and their heirs
or assigns by these presents with the said party of the second
part that they will make to him, his heirs, executors, adminis-
trators and assigns a good and sufficient general warranty
deed for the premises herein described, and will deliver pos-
session of said premises to the said party of the second part,
his executors, administrators or assigns upon the payment of
the purchase money herein named."

Third. That said instrument was duly acknowledged and
recorded in the recorder's office of Greene county, Indiana.

Fourth. That on the 21st day of January, 1885, said Sam-
uel N. Yeoman, by deed of conveyance duly acknowledged
and recorded in the recorder's office of said county, con-
veyed all his right, title and interest to numerous tracts of
land upon which he had acquired coal leases, in Greene
county, Indiana, to the defendant, which deed of convey-
ance contained the description of real estate contained in said
instrument in writing above set out, and by said description
purported to convey the interest of said Samuel N. Yeoman
in said lands to the defendant.

Fifth. That on March 31, 1885, said Mary A. Fainot and
husband conveyed to Margaret Combs the lands described in
the complaint, "in which deed of conveyance it was stipu-
lated that the same was made subject to a certain coal lease

and option of purchase for $35 per acre, held by the said Samuel N. Yeoman on said lands."

Sixth. That on the 6th day of August, 1890, said Margaret Combs died intestate in Greene county, Indiana, leaving plaintiffs herein as her only heirs at law, and seized in fee simple and in possession of the real estate described in plaintiffs' complaint.

Seventh. That in the months of January, February, and March, 1890, the defendants mined not less than 100 tons of coal from the lands described in the complaint herein, the royalty upon which amounted to $10; that payment for the same has not been made.

Eighth. That the coal so mined by defendant was so mined without the knowledge of defendant's officers, directors, and employes; that the same was being mined from the plaintiffs' land, but with the belief that said coal was being mined from lands of defendant adjacent to said lands of plaintiffs, and that, as soon as said mistake was discovered, defendant ordered its employes to cease mining under plaintiffs' lands, and that, aside from the coal so mined by mistake, the defendant had never mined any coal from plaintiffs' land.

Ninth. That, in less than one year from the execution of said writing above set out, defendant caused to be constructed the railroad mentioned therein, from the I. & V. railroad to within one-half mile of John V. Griffin's mine, into Stockton township, Greene county, and excavated and constructed a shaft, and built a tipple, and supplied the necessary machinery for mining coal and equipping a coal mine on lands adjoining the lands of the plaintiffs, the right of possession of which lands at said time was held by the defendant under a verbal contract with the owner of said lands, etc.

Tenth. That there is and has been continuously a highway on the line between the lands of the plaintiffs and the lands on which the defendant's mines are constructed.

Eleventh. That neither at the time of the execution of

the lease by Eugene Fainot and Mary A. Fainot to Samuel Yeoman, nor at any time thereafter, did either the said Eugene or Mary A. Fainot own, or have any interest in, any lands situated in either the southwest quarter of the southwest quarter of section twenty-five, in township seven north, of range seven west, or in the northwest quarter of the northwest quarter of section thirty-six, said township and range, other than the lands described in the complaint.

Twelfth. That said Eugene Fainot and Mary A. Fainot never executed any other lease to said Samuel N. Yeoman than that set out in finding number two herein.

Thirteenth. That defendant or its predecessors did not begin the development or mining of coal from said lands within eighteen months from the time of the execution of said lease, nor has such development or mining of coal been done or begun yet.

It is contended by the learned counsel for appellant that the special finding is not sufficient to support the judgment for the following reasons: First. There is no finding that appellees had any title whatever to the lands in dispute, or were entitled to the possession thereof; second, there is no finding that appellant is asserting a claim to the premises adverse to appellees; third, it is not found that the description of the land, as contained in the lease, does not fully identify the land; fourth, there is no finding that appellant abandoned the work of mining coal, and that he forfeited the lease; fifth, the finding does not disclose that any demand for royalty was made or that the work should proceed more rapidly.

In respect to the first of the above objections, it may be said that by the provisions of section 1070 R. S. 1881, section 1082 Burns 1894, section 1070 Horner 1897, the owner of real estate, in or out of possession, may maintain an action to quiet his title thereto.

By the first finding it is shown that Mrs. Fainot, on November 10, 1883, was the owner in fee simple and in posses-

sion of the real estate in controversy. In March, 1885, it appears that she and her husband conveyed this land to Margaret Combs, who in August, 1890, died intestate at Greene county, Indiana, the owner in fee and in possession of said premises, leaving appellees surviving her as her only heirs at law. As both parties in this case claim through a common grantor, these facts at least are *prima facie* sufficient to establish that appellees, at the time they commenced this action, owned and held in fee the land in question by descent, as tenants in common.

In regard to the second objection urged against the special finding, it may be said that it does disclose that appellant, when challenged by appellees' complaint to assert its claim or title to the land, did so by setting up the lease set out in the finding. This instrument, which, as it appears, was to operate for ninety-nine years, was duly recorded in the recorder's office of Greene county, Indiana, wherein the land is situated. These facts certainly establish that the right or title, which appellant asserted under this lease was adverse to appellees, and if, for any sufficient reason, the lease is shown to be invalid or ineffective, it, under the circumstances, would serve to cast a cloud upon appellees' title, and an action to quiet their title and free the same from such an unfounded claim could be maintained. *Cuthrell* v. *Cuthrell*, 101 Ind. 375; *Woodward* v. *Mitchell*, 140 Ind. 406. It must follow, therefore, that appellant's second objection is not tenable.

The fourth and fifth contentions will be considered together. Appellees' learned counsel contend that the judgment of the lower court can and ought to be sustained upon all or either of the following grounds: First, that the description of the leased premises is so uncertain as to render it void; second, that the provisions of the lease imply that the lessee shall, within a reasonable time, begin to mine the coal underlying said premises, and that a failure of the lessees to do so will result in a forfeiture of his rights; third, that the

facts, as found by the court and established by the evidence, show that appellant had violated an express condition of the lease, and therefore, by virtue of its express stipulation, terminated or forfeited all of its rights, and that the lease, so far as appellant is concerned, had been rendered null and void.

In our opinion, at least the third contention of appellees' counsel must be sustained; and, as this will result in an affirmance of the judgment, consequently we may dismiss the question relative to the sufficiency of the description of the land as contained in the lease. It is true that the court does not expressly find, *in haec verba,* that appellant abandoned the work required to be performed by the lease; but facts sufficient, however, are shown to justify the conclusion that, prior to the beginning of this action, appellant's rights under the lease, by virtue of its having violated the terms or conditions thereof, had ceased or terminated, and that it was estopped thereby from setting up the lease against appellees.

The rule asserted by counsel for appellees relative to an implied forfeiture of leases of this character is well supported by the authorities. In leases of mineral lands, of the nature of the one in question, where the lessee agrees to pay to the lessor a royalty or rent, which depends on the amount of coal or other product mined, the lessee thereby, in the absence of any provision to the contrary, impliedly obligates himself to begin the development of the coal, and the mining thereof, within a reasonable time after the execution of the lease. As to what may be regarded as a reasonable time, however, depends upon the circumstances of the particular case. Where the rent to be paid to the lessor is a royalty measured by so much per ton of the product mined, the authorities affirm that it is not within the option or discretion of the lessee to fail to develop and operate the mines upon the leased premises for an indefinite or unreasonable time. A failure upon the part of the lessee, for an unreasonable length of time, to carry into effect the purposes of such a lease by opening and working the mines underlying the leased premises, will be

held to operate as a forfeiture of his rights. The reason for the rule is obvious. *Conrad* v. *Morehead,* 89 N. C. 31; *Maxwell* v. *Todd,* 112 N. C. 677, 16 S. E. 926; *Shenandoah Land, etc., Co.* v. *Hise,* 92 Va. 238, 23 S. E. 303, and cases there cited; *Bluestone Coal Co.* v. *Bell,* 38 W. Va. 297, 18 S. E. 493; *Kleppner* v. *Lemon,* (Pa.) 35 Atl. 109, 38 Weekly Notes of Cases 388; *Sharp* v. *Wright,* 28 Beav. 150.

In this appeal, however, the parties thereto saw proper to provide therein, among others, an express condition, the violation or breach of which upon the part of the lessee was to result in terminating his rights. This condition is embraced in that part of the proviso in the lease which we have emphasized by italics. The substance of this condition is that in the event of the failure or neglect, for a period of eighteen months after the date of the lease (Nōvember 10, 1883), upon the part of the lessee, to begin work on the lands, and develop the coal interest leased, by opening shafts or mines on said lands, or upon adjacent premises, "by, through, or from which" the underlying coal could be mined and removed, etc., it should be lawful for the lessors, their heirs or assigns, without further demand, notice, or act, into said premises to reënter, etc.; and thereupon the lease was to cease or terminate and be "utterly void."

Counsel for appellees say: "We concede that this provision does not require that a coal shaft or mine must be erected on this land. To erect it on adjacent lands would be sufficient so far as concerns the mere erection of the shaft." They assert, however, that by the express terms of the condition in question, it must be a mine or shaft through or from which the underlying coal of the leased premises can be mined and removed. We concur in this contention. It is true that by the eighth finding it is shown that in less than one year after the date of the lease the railroad mentioned therein was built as required, and that the defendant constructed a shaft and equipped a coal mine on lands held by it under a verbal contract, which lands, as the finding states, were adjacent to the

premises in controversy. But it is certainly evident that these acts of appellant, alone, were not a full compliance with the requirements of the condition as imposed by the lease. The mere erection and equipment of the shaft or mine, within the stipulated period, upon either the leased lands or those adjacent thereto, by which the coal underlying the former could be mined and removed, manifestly cannot be deemed or held to bring the lessee fully within the requirements of the lease. If it could be, then appellant, having taken these steps, might cease to proceed further in the matter of developing or mining coal upon the leased premises until it suited his own fancy to do so, and thereby deprive the lessor, for an indefinite time, of his royalty or rent as fixed by the terms of the lease. The instrument in question cannot, in reason, be interpreted or held only to require the lessee to supply the means for developing the coal under the lands in controversy, and then fail or neglect, thereafter, for a period of twelve years, to employ such means for the purpose intended.

Appellant, as it appears, through mistake, in the year 1890, mined from these premises about 100 tons of coal, but, as soon as the mistake was discovered, it directed its employes, it seems, to cease mining the coal from these lands; and, with the exception of the coal so mined through mistake, appellant, together with its predecessor or assignor, has entirely failed, from the time of the execution of the lease to the beginning of this action, covering a period of time in excess of twelve years, to begin the development or mining of coal from the premises in controversy.

It was clearly contemplated, we think, by the parties to the lease in question, as disclosed by the light of its own provisions, that the development of the coal interest should be actually begun in good faith by the lessee within eighteen months from the time the lease was executed, and that a violation of this condition, as expressly stipulated, should operate to render the lease null and void, to the extent, at least, that all of

appellant's rights thereunder would be extinguished.   In the case of *Woodward* v. *Mitchell*, 140 Ind. 406, a lease granting the right to mine coal, stone, etc., for a term of years, was involved.   The lessor under that lease was to receive a certain part of the net profits arising from the output of the mines; and it was further provided therein that, if the enterprise should be abandoned for twelve months, it should cease and become null and void.   No time was fixed by the lease when the work of mining the coal or stone was to begin.   This court held in that case that the failure to commence such mining operations within twelve months after the term of the lease began operated as a forfeiture of the lessee's rights thereunder.   That appellant is shown, by the facts found by the court, to have wholly failed to comply with the express requirements of the condition imposed by the lease, there can be no doubt.   That such failure, *ipso facto*, at the option of the lessor, or those claiming through her, as her heirs or assigns, rendered the lease null and void, so far, at least, as the rights of appellant thereunder are concerned, and that it is estopped or debarred from setting up the lease as against appellees, are well affirmed propositions.   *Wills* v. *Manufacturers, etc., Co.*, 130 Pa. St. 222, 18 Atl. 721, 5 L. R. A. 603, and cases cited; *Guffy* v. *Hukill*, 34 W. Va. 49, 11 S. E. 754, 8 L. R. A. 759, and authorities there cited; 2 Taylor's Land. and Ten. (8th ed.) section 492, and cases cited in foot note 3 on page 76.   It cannot be successfully controverted but what appellees, under the circumstances, were authorized to enforce the forfeiture; they being heirs of Mrs. Combs, to whom the leased premises were conveyed by the lessor.   Section 5218 R. S. 1881, section 7099 Burns 1894, section 5218 Horner 1897; *Swope* v. *Hopkins*, 119 Ind. 125; 12 Am. and Eng. Enc. of Law, p. 1035, clause 13; *Maxwell* v. *Todd*, 112 N. C. 677.

It is insisted by counsel for appellant that, if a forfeiture actually resulted by reason of the violation or breach of the condition in question, the same must be deemed to have been

Island Coal Co. v. Combs.

waived, as no steps appear to have been taken upon the part of appellees to reënter the premises, by a demand or otherwise, and that no demand has been made upon appellant, or notice given to it, requiring it to comply with the conditions or terms of the lease. In answer to this, it may be said that the lease expressly provides that the lessors, their heirs or assigns, upon the violation of the condition in question, may, without demand, notice or act, reënter the premises, etc. This certainly is an express waiver, upon the part of the lessee of all demands or notice. Again, there is another reason why a demand for a reëntry was not necessary, if such a demand, under the provisions of the lease, was essential. It is shown that appellees' ancestor was in possession at the time of her death, and her possession must be deemed to have been continued in appellees, who are her heirs, and to whom the leased premises descended. Appellees, therefore, being already in possession of the lands, manifestly could not reënter the same as they certainly could not enter upon themselves. *Guffy* v. *Hukill*, 34 W. Va. 49, and authorities cited; *Maxwell* v. *Todd*, 112 N. C. 677. It is also true that the mere indulgence or silent acquiescence upon the part of the lessor is not to be construed as a waiver of a breach of the condition of forfeiture. *Lindsey* v. *Lindsey*, 45 Ind. 552-567; *Jackson* v. *Crysler*, 1 Johns Cases, 125; 2 Taylor's Land. and Ten., section 498.

Without further extending this opinion, we are constrained to hold that the court did not err in its conclusions of law upon the special finding of facts. We have carefully read and considered the evidence, and are satisfied that it fully supports the finding and judgment of the lower court; and that the court did not err in denying the motion for a new trial. We discover no error in the record, and the judgment is therefore affirmed.