CHARLESTON, SOUTH CAROLINA, MINING & MANUFACTUR-
ING COMPANY *v.* AMERICAN AGRICULTURAL CHEM-
ICAL COMPANY *et al.*

(*Nashville.* December Term, 1911.)

1. **MINING LEASES.** Not forfeited for nonpayment of royalties
in the absence of demand and stipulated notice, when.

Where a mining lease provides for the payment of a minimum
royalty by the lessee to the lessor, and for notice of intention
to forfeit the lease for nonpayment of the royalties accrued,
there can be no forfeiture of the lease for mere nonpayment
of such royalties or rents for a term of years, in the absence
of such notice, and in the absence of a demand for the same
when due, and on the premises where no other place is agreed
upon. (*Post, pp.* 21-26, and especially 25 and 26.)

Case cited and approved: Parks v. Hays, 92 Tenn., 161.

2. **SAME.** Lessor's possession for reserved purposes is not ad-
verse to lessee's mining interest, when.

Where a mining lease reserved to the lessor the right to use the
premises for farming purposes and reserved the right to the pos-
session and control of the land for all purposes other than that
of mining, the possession for such purpose by the lessor and
his grantee is not in itself adverse to the lessee or his assigns,
because each party was entitled to the possession of the par-
ticular interest owned by him. (*Post, pp.* 25-27.)

3. **SAME.** Abandoned by lessee by consent of lessor, by their
respective surrender and resumption of possession.

A mining lease may be abandoned by the lessee with the consent
of the lessor; and such abandonment may be effected by the
lessee's relinquishment of his rights under the lease and his
surrender of the possession, and the lessor's acquiescence therein,

Mining & Manufacturing Co. v. Chemical Co.

and resumption of the possession of the premises. (*Post, pp.* 27-30.)

Case cited and approved: Gray v. Kaufman, 162 N. Y., 388.

4. SAME. Abandonment is generally a question of intention, and a mixed question of law and fact.

Whether a mining lease has been abandoned is generally a question of intention, and is a mixed question of law and fact; but some acts of the lessee, as his failure to work or drill, or continue explorations for varying periods, controlled to some extent by the terms of the particular lease, are sufficient to raise a presumption of abandonment as a matter of law. (*Post, pp.* 30, 31.)

Cases cited and approved: Gentry v. Gentry, 1 Sneed, 97; Traynor v. Johnson, 1 Head, 54; Ross v. Swan, 7 Lea, 468; Prewitt v. Bunch, 101 Tenn., 742.

5. SAME. Purchaser under foreclosure sale taking possession is liable for fixed royalties, but not taking possession is not so liable.

Where a mining lease was sold on foreclosure, the purchaser's acceptance of the lease and his entry into possession subjects him to the performance of all contracts running with the land, including one for the payment of the fixed minimum royalties; but if he does not take possession, he is not personally liable for the royalties. (*Post, pp.* 31, 33.)

Cases cited and approved: Snowden v. Association, 7 Lea, 226; State v. Martin, 14 Lea, 93; Tradesman Pub. Co. v. Knoxville Car Wheel Co., 95 Tenn., 634.

6. SAME. Purchaser of lease, if he accept the same, must pay royalties and operate mine.

It is the duty of the purchaser of a mining lease at a foreclosure sale thereof, if he accept the lease, not only to pay the minimum royalty semiannually, as stipulated in the lease, but also, actively and in good faith, to operate the mine to the full extent its quality and quantity justified. (*Post, pp.* 34, 35.)

7. **SAME.** Facts constituting the lessee's abandonment of the lease acquiesced in by lessor; case in judgment.

Where the purchaser at the foreclosure sale of a mining lease, providing for the semiannual payment of a fixed minimum royalty, did not go into possession, and for nearly ten years made no payment of royalty, although he knew that the owner of the land had sold the land to complainant, a mining corporation, which denied the validity of such lease; and while such foreclosure purchaser was at the same time buying other mining lands in that vicinity, he asserted no right to said lease so purchased by him, it was held that such acts and conduct, as a matter of law, raised a presumption of an intention to abandon the lease, and the owner of the land and his grantee having treated the lease as abandoned, and having made no demand for payment of such royalties, such purchaser of the lease cannot, at a subsequent time, when mining has become more profitable, claim the right to mine under his lease, nor can his assignee under an assignment made after the lapse of nine years. (*Post, pp.* 31-39.)

Cases cited and approved: Petroleum Co. v. Coal, Coke & Manufacturing Co., 89 Tenn., 391; Porter v. Noyes, 47 Mich., 55; Koch's Appeal, 93 Pa., 434; Ray v. Gas Co., 138 Pa., 576; Aye v. Phil. Co., 193 Pa., 452; Conrad v. Morehead, 89 N. C., 31; Coal Co. v. Combs, 152 Ind., 379.

FROM HICKMAN.

Appeal from the Chancery Court of Hickman County to the Court of Civil Appeals, and by *certiorari* from the Court of Civil Appeals to the Supreme Court.—J. W. STOUT, Chancellor.

J. C. BRADFORD and R. J. COOPER, for complainant.

PITTS & McCONNICO and H. NIXON, for defendants.

MR. CHIEF JUSTICE SHIELDS delivered the opinion of the Court.

The original bill in this cause was filed November 19, 1906, and the amended bill July 25, 1911.

Complainant claims to hold in fee, under a conveyance made by Mrs Alice Land to its vendor, the Virginia-Carolina Chemical Company, July 3, 1899, a tract of land situated in Hickman county, on which there are valuable deposits of merchantable phosphate rock, and seeks to enjoin the defendant, American Agricultural Chemical Company, claiming under a lease made to Robin Jones, March 3, 1895, by Mrs. Land and her husband, then living, of the same property, authorizing him, for a certain consideration, to mine and take therefrom the phosphate rock for and during a period of twenty years, upon the ground that all rights under said lease have been lost for reasons hereinafter stated.

The facts in relation to the lease to Robin Jones, and the conveyance to the Virginia-Carolina Chemical Company, and the terms of the two instruments are these:

Robin Jones, acting for himself and associates, M. D. Cooper and others, March 4, 1895, obtained from J. D. and Alice Land, husband and wife, a lease upon the lands in controversy, granting him the right to mine and take from the premises all minerals, including phosphate rock, for the period of twenty years, in consideration of the agreement of the lessee, who also executed

the lease, to pay the lessors ten cents per ton for each ton of phosphate rock mined and removed, with a provision for a minimum royalty on 3,600 tons, or $360, payable in equal semiannual payments each year; and in case said Robin Jones, his heirs and assigns, failed to pay said $360 as provided, or the ten cents per ton on the rock mined, upon thirty days' notice being given him or them by the grantors or lessors, their heirs and assigns, the lease to cease and terminate. The lessors reserved the right and privilege to use the premises for farming purposes, not inconsistent with the rights granted the lessee.

This lease, and others of the same character in the same neighborhood, were obtained for the Swan Creek Phosphate Company, a corporation organized to mine the phosphate on the lands leased. The leases seem to have been assigned to M. D. Cooper in trust for the corporation, and, with the assignments of the same, were duly registered in the proper office of Hickman county previous to June 15, 1905. M. D. Cooper, June 8, 1895, acting for the Swan Creek Phosphate Company, conveyed the leaseholds to Wm. Prescott, a citizen of Ohio, by deed, absolute on its face, but in fact a mortgage, to secure $20,000 borrowed from Prescott by the Swan Creek Phosphate Company, and this conveyance was duly registered July 2, 1895, in Hickman county.

The Swan Creek Phosphate Company entered upon the premises and began mining the rock, but was unsuccessful in its business, and its affairs were wound up in a cause brought in the circuit court of the United

States at Nashville, under the style of *Wm. Prescott* v. *M. D. Cooper et al.,* in the fall of 1896. The said mortgage was foreclosed, and the leaseholds sold and purchased by Wm. Prescott, to whom they were conveyed by H. M. Doak, master commissioner in said cause, March 31, 1897, and duly registered June 5, 1897, in Hickman county.

Wm. Prescott, May 24, 1906, assigned and conveyed the lease upon the premises in question to the American Agricultural Chemical Company, which conveyance was duly registered July 13, 1906, and the vendee immediately began mining the phosphate rock upon the premises, and was continuing to do so when enjoined under the original bill in this cause, filed November 19, 1906.

In this connection it is well to state that the cause of the failure of the Swan Creek Phosphate Company was the discovery of deposits of phosphate rock at Mt. Pleasant, Maury county, of a superior quality, which could be mined much cheaper, and where the transportation facilities were much better, all of which caused a general cessation of mining phosphate by all parties engaged in the business in the Hickman county field for several years.

The Virginia-Carolina Chemical Company purchased the land, leased as above stated to Robin Jones for the Swan Creek Phosphate Company, from Mrs. Alice Land, her husband having died, July 3, 1899, taking a conveyance of the same in fee simple, which was recorded in the proper office of Hickman county, July 11, 1899. This conveyance contains this recital:

"This deed is made subject to such rights as the pretended owners of a lease heretofore given to Robin Jones on said land may have, if any, under the law; but it is not intended hereby to validate said lease, as the same, it is claimed, has been abandoned and forfeited. I also hereby transfer and convey to said Virginia-Carolina Chemical Company all right I may be entitled to under said lease, in case the same should be held to be valid, ·in the way of royalties already accrued or that may hereafter accrue, or otherwise; it being hereby intended to place the said company in my place in reference to said lease, and to have all the rights I am entitled to thereunder."

It also contains covenants of general warranty, and that it was unincumbered, "except as to the lease hereinbefore mentioned." The purchaser took possession of the land under this conveyance, and held possession until November 26, 1902, when it conveyed it to the Charleston, S. C., Mining & Manufacturing Company, which has been in possession from that time. This conveyance was duly and properly registered in the office of the register of Hickman county.

The Swan Creek Phosphate Company, soon after the lease to Robin Jones for its use, began to mine and ship the rock, and continued to do so until its failure in the latter part of 1896, paying to the lessors about $200 of royalties. After this neither it nor Wm. Prescott, after his purchase at the foreclosure sale, made further efforts to mine the rock, and no payments upon the minimum royalties contracted for in the lease were

made.   When defendant purchased the lease in 1906, it began mining the rock, and tendered to the attorney of the Virginia-Carolina Chemical Company, in Hickman county, the amount of royalties due, and, after the original bill in this case was filed, again tendered to the Virginia-Carolina Chemical Company, and the Charleston, S. C., Mining & Manufacturing Company, the amount of minimum royalties due each of them under the lease during the time they owned the land, respectively, which tenders were also refused.

Complainant in its amended bill attacks the lease made to Robin Jones, and now claimed by the defendant, claiming it to be void and a cloud upon its title; the grounds of the attack being:

1.   That the lease has been forfeited for nonpayment of accrued royalties.

2.   That the rights of the defendant under the lease are barred by the statute of limitations of seven years.

3.   That the lease of the defendant has been terminated by abandonment.

We do not think that the lease can be held to be forfeited for the nonpayment of the royalties accrued. Royalties of this character are in the nature of rent charges, and controlled by the rules applicable to the same.   It is well settled that, in order to create and effect a forfeiture for nonpayment of rent, there must be a demand for the same upon the day when due, and on the premises, where no other place is agreed upon. Conditions in leases providing for forfeitures for nonpayment of rent are strictly construed, and no forfeit-

ure will be decreed upon that account, unless the lessor strictly complies with the law in demanding payment. *Parks* v. *Hays*, 92 Tenn., 161, 22 S. W., 3.

Further, this lease provides that sixty days' notice shall be given of the intention to forfeit the lease for nonpayment of royalties. There is no proof in this record of any demand for the rents, on the premises and when due, and none of notice that forfeiture would be insisted upon. The testimony of John Smithson is wholly insufficient to establish these facts. In addition to this, his action in writing letters to the Swan Creek Phosphate Company and its officers, and conferring with Mr. Nixon, the attorney for the company, were after that company had parted with its interest in the property, and could not affect the purchaser, Prescott.

The American Agricultural Chemical Company is not barred by the statute of limitations of seven years. It does not clearly appear that the complainant and its vendor were in adverse possession of the property, under color of title, for the full period of seven years. The admissions in the answer would probably have been sufficient to make this out, but for the fact that complainant affirmatively proved to the contrary by its general manager and witness, Wright.

In addition to this, there is no such adverse possession of the mines, or right to mine the rock, as would bar those claiming under the Robin Jones lease. The lessors in that lease reserved the right to the possession and control of the land for all other purposes save that of mining the minerals and phosphate rock, and the

Jones lease is specially referred to, and the land conveyed subject to it, if valid, which is a question left open. The possession of Mrs. Land and that of the Virginia-Carolina Chemical Company, and of the complainant, was consistent with that of Prescott. The parties were each entitled to possession of the particular interest they owned in the land. It is attempted to be proved by Mr. Wright, who was general manager for the Virginia-Carolina Chemical Company, and for the complainant, that after the former company purchased the land, in 1899, it mined the phosphate rock thereon. Mr. Wright is not a satisfactory witness, and his testimony upon this subject is overcome by that offered by the defendant. We think that the weight of the proof shows that the Virginia-Carolina Chemical Company probably prospected the land before purchasing it, and that three of its men did some cleaning up in the old mine after the purchase, through mistake, but that there was no rock mined there. There was no adverse possession of the mine or the mining right.

The next position of the complainant, that the lease from Land and wife to Robin Jones has been abandoned, is a much more serious one than those we have disposed of, and presents the determinative question in this case.

There is no doubt but that leases of the character under consideration may be abandoned by the lessee with the consent of the lessor. In Baringer & Adams on the Law of Mines and Mining, section 170, it is said:

"Abandonment acquiesced in by the landlord amounts to a surrender, and is a restoration of the landlord's

occupancy. Abandonment of the lease—that is, the leaving of the premises with the intention not to return —or the relinquishment by the lessee of his rights under the lease, without intention to resume them, may therefore be treated by the landlord as a termination of the lease."

And in Washburn on Real Property, vol. 1, section 739, it is said:

"Any acts which are equivalent to an agreement on the part of the tenant to abandon, and on the part of the landlord to resume possession of the demised premises, amount to a surrender of the term by operation of law."

Mr. Tiedeman, in his work on Real Property, section 198, says:

"A lease in writing, therefore, can, as a general rule, only be terminated by a surrender in writing; and if the lease was required to be under seal, the surrender must be also. But if the lessee take a new lease, the enjoyment of which is incompatible with the continuation of the old lease, or if the lessee abandons the possession, and the lessor actually enters into possession, or leases the premises to other parties, such acts will be sufficient to work a surrender of the premises, so far, at least, as to relieve the tenant from liability on his covenants. But the abandonment of possession by the tenant will not work a surrender of the premises, unless it is assented to by the lessor, and such acceptance must be shown by word or acts, such, for example, as entry into possession."

In Jones on Landlord and Tenant, section 539, we find this statement of the law:

"The lessee cannot surrender premises leased to him before the expiration of the term, so as to absolve himself from paying rent, without the consent of the lessor, and the abandonment of the premises with notice will not exonerate the lessee from paying the rent unless the lessor assents. A surrender cannot be effected by the act of only one party. The concurrence in some way of both lessor and lessee is necessary in order to accomplish a surrender, . . . and entire abandonment of the demised premises by a tenant, exposing them to risk of loss, gives the lessor a right to declare the lease at an end, and the lessee cannot return and claim to continue under the lease."

In *Gray* v. *Kaufman,* 162 N. Y., 388, 56 N. E., 903, 49 L. R. A., 580, 76 Am. St. Rep., 327, where it is held the lessor had assented to the abandonment, it is said:

"It is so well settled as to be almost axiomatic that the surrender of premises is created by operation of law, when the parties to a lease do some act so inconsistent with the subsisting relations of landlord and tenant as to imply that they both agreed to consider the surrender as made."

Complainant's contention is that the action of the assignee of Robin Jones, the Swan Creek Phosphate Company, in ceasing to mine the phosphate rock on the leased premises, and pay accrued royalties, and that of Wm. Prescott in failing to enter on the premises after his purchase, in 1897, and to pay minimum royalties

accruing semiannually, was an abandonment of the lease, which was accepted and made effective by the sale of Mrs. Land, July 3, 1899, to the Virginia-Carolina Chemical Company, and also that the continued failure of Wm. Prescott to work the mines and pay the minimum royalties for some seven years thereafter was in itself an abandonment of the lease, which now estops him from asserting any rights under it.

Abandonment, or waiver, as a rule, is a question of intention, and is generally one of fact, or of mixed law and fact; but it has been held that the conduct of the lessee would raise a presumption of abandonment as a matter of law. In Cyc., vol. 7, p. 739, it is said:

"As a general rule, the question whether or not there has been an abandonment by the lessee of his rights under the lease, is regarded as one of fact, although a failure to work or drill, or continue explorations for varying periods, controlled to some extent by the terms of the particular lease, has been held in some cases to raise a presumption of abandonment as a matter of law."

In *Traynor* v. *Johnson,* 1 Head, 54, it is said:

Whether or not the circumstances of the case "amounted to a waiver of conversion, depends upon the intention or motive which prompted the act. And the motive or intention of the act in this case, as in most other instances, is a matter of inference, to be deduced with more or less certainty from the external and visible acts and conduct of the party, and all the accompanying circumstances of the particular transaction."

It is well settled "that to make out a case of abandonment, or waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such a purpose, or acts amounting to an estoppel on his part." *Ross* v. *Swan*, 7 Lea, 468. Or, as stated in *Masson* v. *Anderson*, 3 Baxt., 304: "Abandonment or waiver of a right important to parties cannot be made out by uncertain implication, but ought clearly to appear. To constitute such a waiver of a benefit there must be clear, unequivocal, and decisive acts of the party, an act which shows a determination not to have the benefit intended." To the same effect are the cases of *Gentry* v. *Gentry,* 1 Sneed, 97, 60 Am. Dec., 137; *Prewitt* v. *Bunch,* 101 Tenn., 742, 50 S. W., 748.

We will now apply these principles to the facts of this case. We do not think that it can be said that the action of the Swan Creek Phosphate Company, in ceasing to mine the rock, and failing to pay the royalties accrued, was an abandonment of the lease. The action of the company was caused by its insolvency, a thing it could not control, nor could it, at the time of cessation of work and failure to pay, by any act of its own, defeat the lease because it had parted with the title. It caused its trustee, in July, 1896, to convey the lease to Wm. Prescott, and after this it had no power to cancel the same, not even by an express act, much less by implication. The testimony of John Smithson of the failure of the company to pay royalties, and of Robin Jones that the company had abandoned the lease, amounts to nothing for the same reason.

The question then is: Did Wm. Prescott, expressly or by his conduct, abandon the lease; and was it in this way terminated with the assent of Mrs. Land, or those who have held and now hold under her?

The phosphate rock could not be profitably mined in competition with the Mt. Pleasant field when Prescott purchased the lease, and this to some extent accounts for his failure to enter upon the land during the period between the date of his purchase in 1897, and the sale to the Virginia-Carolina Chemical Company in 1899, but not for his failure to pay the minimum royalty.

It appears in the record that, while it was not profitable to mine in the Hickman county field, in 1897, 1898, and 1899, the property in this field was considered valuable, and investors were anxious to obtain it with a view of the future. Robin Jones testifies that Wm. Prescott procured him to go there and take options upon other lands, presumably in the same neighborhood, with a view of purchasing them. The Virginia-Carolina Chemical Company, conceded to be largely interested in phosphate rock, was making investments in the territory and actually purchased the property now in controversy, with notice of the previous lease, taking the chances of its cancellation by abandonment. It appears with reasonable certainty that Prescott knew what was being done in the phosphate business in Hickman county all the time. He was an officer of the defendant company, which was operating there, and must have known that the Virginia-Carolina Chemical Company had purchased the Land farm, and that the

only object it had in doing so was to acquire the phosphate thereon, and he in no way asserted any claim, or made any objection. He is not examined to explain this conduct.

An important matter, bearing on Prescott's intentions concerning the Swan Creek Phosphate Company's leases, including the one in question, as purchaser at the foreclosure sale, is his legal relations to them. If he accepted the lease and entered possession of the land, as such purchaser, he subjected himself to the performance of all the covenants which ran with the land, including the one to pay the fixed minimum royalty of $360 per annum. *State* v. *Martin*, 14 Lea, 93, 52 Am. Rep., 167. However, if he failed to take possession, and take the lease, he would not be personally liable for the royalties. *Snowden* v. *Memphis Park Association*, 7 Lea, 226; *Tradesman Pub. Co.* v. *Knoxville Car Wheel Co.*, 95 Tenn., 634, 32 S. W., 1097, 31 L. R. A., 593, 49 Am. St. Rep., 943.

If he did not accept the lease, he acquired no rights under it, and his vendee or assignee, the defendant, can have none. There is no evidence of acceptance in the record, either by word or act, other than the registration of the deed made him by H. M. Doak, commissioner, in June, 1897, and his conveyance to the defendant in May, 1906. It was his duty to accept the lease in a reasonable time. The lessors had the right to know whether he would accept and comply with its terms, so that they might rely upon him to pay the minimum royalties and fully develop their property, or seek other

126 Tenn.—3

lessees who would do so, or otherwise dispose of the property. He could not keep them in a condition of uncertainty as to their rights, and unreasonably delay them in the enjoyment of their property.

We are to determine, upon all the facts, whether it was the intention of Wm. Prescott to abandon the Robin Jones lease, purchased by him. We think it must be held that such was his intention, that his conduct amounted to a surrender and an abandonment, and that the termination of the lease in this way was assented to by Mrs. Land when she conveyed the land to the Virginia-Carolina Chemical Company, and that the conduct of that company, and complainant, in not giving notice of forfeiture, as provided in the lease, or making demand for the semiannual accruing royalties for years, was a further assent thereto on their part. We can place no other construction upon the action or rather inaction, of Wm. Prescott. While he was purchasing other phosphate lands in the neighborhood, and the defendant company of which he was an officer was mining the phosphate, he asserted no right under his purchase of the Jones lease, and in no way bound himself to comply with its terms, and be subject to its burdens. His silence and inactivity in asserting his rights, and his failure to pay the constantly accruing royalties, under these circumstances, are irreconcilable with an intention to claim under the lease. It was his duty, if he accepted the lease, not only to pay the minimum royalty semiannually, but to actively and in good faith mine the rock thereon to the full extent its quality and quan-

tity justified.  This was the implied obligation of the
lease, in order.that the lessors might derive their rea-
sonable expectation in the enjoyment of their property.
He had no right to merely hold the rights of the lessee
under the lease, without giving full force to those of
the lessor.  No other reasonable deduction can be drawn
from his conduct in withholding his acceptance of the
lease and consequent liability thereunder, and failure
to discharge his duties in mining the phosphate and
paying royalties, than that it was his intention not to
take under and abandon it.   It is also equally clear
that the failure of Mrs. Land to collect royalties, and
her conveyance of the property, and that of the Virginia-
Carolina Chemical Company, and the complainant, in
their failure to demand the minimum royalties, was
an assent on their part to the abandonment of the lease,
and that, by the conduct of both lessors and lessees,
the lease was terminated previous to the entry of de-
fendant.   The assignment of the lease by Prescott to
the defendant after the lapse of nine years was evidently
brought about by the increased value of phosphate rock
in 1906.   It is true that the lessor had the right, upon
failure to pay the semiannual royalties, to forfeit the
lease by sixty days' notice to the lessee; but this was a
provision in favor of the lessors, and they were not
bound to exercise the right given them, but could assent
to the cancellation in the manner they did do so.   In
every case the intention of the lessee to abandon the
lease, and that of the lessor to consent to its termina-
tion, must depend upon the facts of the particular trans-

action; but some of the adjudged cases will throw light upon this one.

In *Porter* v. *Noyes,* 47 Mich., 55, 10 N. W., 77, it was held, where mines had been leased for a term of twenty-five years, were not worked at all, and no rent paid for eight years, and the lessees were not in possession, that the lessors were justified in treating the lease as abandoned, and in executing a new lease to other parties. It is there said the change in the condition and prospects of mining, and the new arrangements made with the defendants, brought about the real cause of the renewed interest of complainants and their assignors. We do not think that they can complain that their ultimate lessors acted as they were justified in supposing they had a right to act. They were not bound to keep their property unemployed or in such uncertainties, and they had a right to regard the abandonment as final.

In *Koch's Appeal,* 93 Pa., 434, it is said:

"Where a right to mine ore or other minerals is in consideration of a reservation of a certain proportion of the property to the grantor, the law implies a covenant on the part of the grantee to work the mine in a proper manner, and with reasonable diligence, so that the grantor may receive the compensation or income which both parties must have had in contemplation when the agreement was entered into."

In *Aye* v. *Phil. Co.,* 193 Pa., 452, 44 Atl., 556, 74 Am. St. Rep., 696, it is said:

"The authorities are uniform that under such circumstances (to test the land for oil, and, if successful, pay

·royalties) there is an implied obligation of the lessee to proceed with the exploration and development of the land, with reasonable diligence, according to the other course of business, and the failure to do so amounts to an abandonment, which will sustain a re-entry by the lessor. Abandonment is a question of fact, to be determined by the acts and intentions of the parties. An unexplained cessation of operations for the period involved in this case gives rise to a fair presumption of abandonment, and, standing alone and admitted, would justify the court in declaring the abandonment as a matter of law."

In *Conrad* v. *Morehead,* 89 N. C., 31, it is said:

"It would be unjust and unreasonable, contravening the nature and spirit of the law, to allow the lessee to continue to hold his term a considerable length of time without making any effort at all to mine for gold or. other metals. Such construction of the rights of the parties would enable him to prevent the lessor from getting his tolls under the express covenant to pay the same, and deprive him of all opportunity to work the mine himself, or permit others to do so. The law does not tolerate such practical absurdity, nor will it permit the possibility of such injustice."

In *Ray* v. *Western Pa. Nat. Gas. Co.,* 138 Pa., 576, 20 Atl., 1065, 12 L. R. A., 290, 21 Am. St. Rep., 922, it is said:

"If a farm is leased for farming purposes, the lessee to deliver to the lessor a share of the crops in the nature of rent, it would be absurd to say, because there

was no express engagement to farm, that the lessee. was under no obligation to cultivate the land. An engagement to farm, in a proper manner and to a reasonable extent, is necessarily implied. The clear purpose of the parties to this lease was to have the lands developed, and the half-yearly payments, and the other sum stipulated, were intended, not only to spur the operator, but to compensate Ray for the operator's delay or default."

In *Island Coal Co.* v. *Combs,* 152 Ind., 379, 53 N. E., 452, it is said:

"The requirement is implied that lessees in mineral leases, upon royalties, will develop the property, if exploration warrants it, where the minerals are stable, although the only result of a delay in operating would be to postpone the receipt of profits or royalties."

In our own case of *Petroleum Co.* v. *Coal, Coke &. Mfg. Co.,* 89 Tenn., 391, 18 S. W., 67, it is said:

The law implied a condition that minerals, if any were found, should, within a reasonable time, be operated, or the lease surrendered; and the absence of railway transportation would not affect the question.

It is true that mere delay, without more, will not ordinarily be laches to defeat one of a clear right; but this is not the case. There are here, not only long and unreasonable delay under the circumstances of the case, to explain which defendant offers no evidence, not even examining Mr. Prescott, one of its officers and indirectly interested, but facts decisive and unequiv-

ocal in their nature, showing that Wm. Prescott did not intend to claim under the lease and make himself liable for the burdens it imposed, but that it was his intention to abandon it. His conduct, as we have stated, is susceptible of no other reasonable construction, and after his long delay, indicating this intention, and the acquiescence of the lessors releasing him from liability, he cannot be allowed, when the property has appreciated in value, and it has become his interest to do so, to change his mind.

We are therefore of the opinion that there is no error in the decree of the court of civil appeals, holding that the lease in question had been abandoned with the assent of the lessors, and terminated, and that the complainant, as the present owner of the land, had the right to maintain this bill to enjoin trespasses committed under the color of the same.