# TAYLOR et al. v. WOLF RIVER CORPORATION et al.
## —167 S. W. (2d) 1004.

Middle Section.  June 13, 1942.

Petition for Certiorari denied by Supreme Court, January 30, 1943.

Will R. Storie, of Jamestown, and Albert Williams and Joe Brown Cummings, both of Nashville, for appellants.

Ward R. Case and Robert F. Turner, both of Jamestown, and Lewis S. Pope, of Nashville, for appellees.

HOWELL, J. The bill in this case was filed by the complainants against the defendants, Alvin York and wife, and the Wolf River Corporation, seeking damages for an alleged breach of a contract of lease executed by the Yorks to the Tennessee Barium Corporation, of which the complainants allege they are stockholders. This breach it is alleged was brought about by the conduct of the defendants in entering into another lease from the Yorks to the Wolf River Corporation, which attempted lease was fraudulent and void by reason of champerty. It is alleged that the defendant Wolf River Corporation entered upon the property and mined great quantities of ore therefrom and complainants have a right to the amount of the minerals thus taken from this land and the bill prayed for a discovery in this regard and for a judgment for the value of such minerals. It is further alleged that the defendant York made no demand for any compliance by

the Tennessee Barium Corporation with the terms of the contract and that complainants are willing to do equity by paying the sum of $600 called for in the contract.

The bill further alleges that the Tennessee Barium Corporation was dissolved by the act of the Secretary of State of Tennessee in making a notation of the revocation of its Charter and that the assets of the Corporation passed to them as stockholders.

The bill prays among other things for a discovery as to the minerals mined and for a judgment for the value thereof, and that the lease from York to the defendant Wolf River Corporation be declared fraudulent and void and be cancelled, and that the defendant corporation be enjoined from entering upon the premises. It does not appear that any injunction was granted.

The defendants filed pleas in abatement and answers in which they averred that the Tennessee Barium Corporation was never properly organized, that the complainants could not maintain this suit as alleged stockholders, that the lease contract between York and the Barium Corporation was null and void by reason of the failure of the corporation to pay the minimum royalties provided to be paid and denied all the other material allegations of the bill.

Upon the hearing the Chancellor dismissed the bill and the complainants have appealed and have filed two assignments of error.

The first assignment of error is:

"The Chancellor was in error in holding and decreeing that Alvin York and Gracie York had a right to and did declare a forfeiture of the mineral lease made by them to the Tennessee Barium Corporation on July 7, 1937, and in holding and decreeing that the mineral lease made by

said lessors to the Wolf River Corporation on July 14, 1938, is a valid lease.''

As we view this record the determinative question is raised by this assignment of error.

The findings of fact by the Chancellor are fully justified by the record and we concur therein.

These findings are as follows:

''The Tennessee Barium Corporation was incorporated July 6, 1937. The incorporators were the complainants and John S. Hale. The charter was granted June 30, 1937, and the incorporators met July 6, 1937, and accepted the charter. The Minutes of the meetings of the incorporators have been lost, but the contents are substantially shown by parol proof. J. B. Reagan was elected President of the corporation, John S. Hale Secretary and John Taylor Treasurer. No stock was actually issued to the complainants or any other parties, but the record shows that the four incorporators subscribed to the entire $7500.00 capital stock, each taking a one-fourth thereof. This agreement is clearly established by the weight of the proof, although there is no writing to that effect. The agreement was made at a meeting of the incorporators. No payments were made to the Treasurer but from time to time the incorporators paid expenses of the corporation, amounting to about $250.00 each, the total amount paid by all the incorporators being between $1000.00 and $1200.00. This amount was to be credited, according to the understanding, on the stock to be issued to them. Later, and after most of the transactions involved in this case occurred, John S. Hale assigned his rights and interest to J. B. Reagan, as shown by the written assignment filed to the record. The expenses paid out was in connection with the lease in question and litgaton with reference thereto.

"Some of the incorporators had been conferring with Sgt. Alvin C. York with reference to the F. A. Williams' lease, and immediately after the charter was accepted by the Tennessee Barium Corporation, York executed the lease in question granting the privilege to mine barite from the F. A. Williams' farm at a royalty of sixty (60c) cents per ton. The lease is dated July 7, 1937, and $1000.00 was to be paid as a minimum royalty. $400.00 of said amount was actually paid at the time. The $600.00 was to be paid or stock issued by the end of the year. Nothing else was ever paid to York on the lease. However, the complainants in their bill offered to pay the same and expressed a willingness to do equity in the matter.

"The Tennessee Barium Corporation did not own any other property except this lease and some picks and mattox and shovels, although the individual incorporators, the complainants, are shown to have been financially able as individuals to give the corporation sufficient financial backing to acquire proper machinery and equipment for the successful mining of barite.

"Soon after the lease was acquired by the Tennessee Barium Corporation they sent some employees on the premises with picks and shovels prospecting or making test holes preparatory to setting up operation. Oscar Williams, a son of F. A. Williams, through whom York deraigned his title, interfered and ordered the employees off the premises, whereupon the Tennessee Barium Corporation instituted suit in Chancery Court of Fentress County enjoining the Williams' from interfering with the Barum Company's operaton of the lease. That case was determined by the Chancery Court in May, 1938, and an appeal taken and it was finally determined that it was the owner and had a right to operate under the lease from York. That case was finally determined in December

1939, and is reported in [Tennessee Barium Corp. v. Williams], 23 Tenn. App., 398, 46, 133 S. W. (2d), 1015.

"On July 14, 1938, while litigation was pending with reference to the lease, York executed an exclusive lease of the same premises to the defendant Wolf River Corporation. Later barite mining operation was begun on a large scale under said lease, and was continued and all the barite has been taken from the premises.

"The complainants did not know of the execution of the Wolf River Company's lease until after it was executed. Prior to the execution of the Wolf River lease York had been insisting on the Barium Corporation going ahead and operating the lease, but pending the litigation the Barium Corporation did not consider it proper or adviseable to do so, at least until the title was quieted.

"There is some conflict in the proof as to whether York made demand on the Barium Corporation for the balance of the $1000.00 and declared a forfeiture prior to his execution of the lease to the Wolf River Corporation. However, the weight of proof indicated that York was demanding the $600.00 and insisting upon an operation of the lease, although most of his talk was with John S. Hale, who was the Secretary of the corporation, and made demand and gave notice of forfeiture to J. B. Reagan, who was President of the corporation, through Hale, according to the testimony of both York and Hale."

We find further that this lease contract did not exist only for the purpose of supporting an action in damages for its breach, because although the complainants did not affirmatively bind themselves to mine any ore, they did agree to pay the $600 at the end of the first year, $1,000 at the end of the second year and $1,000 at the end of the third year and they had not done so. At the time of the filing of the bill complainant had made no tender

or offer to pay the amount in default under the contract, which was $2,600. They did say, however, in the bill that they were willing to pay the $600. The Tennessee Barium Corporation had not begun mining under the contract before the filing of the bill, and the defendant York had, with notice to the Secretary of the Corporation, declared the contract forfeited, for the failure to pay $600 due, after demand for same. The Courts will not permit the lessee to hold such a lease without operating under it. On the face of the contract itself it is provided that it is executed to the lessee "for the purpose of mining and operating for gas and oil, barite etc." The lessee will not be permitted, by failing to operate under the lease, to prevent the lessor from leasing the land to others for that purpose. Complainants failure to commence operations in a reasonable time, especially when it had enjoined the Williams' from interfering with it, amounted to an abandonment which justified the defendant York in re-entering the property and leasing to another.

We find as a fact therefore that the complainant had abandoned the lease and that the defendant York had rightfully forfeited it before the lease to the Wolf River Corporation was executed. See Volume 40, C. J., Paragraph 722, at page 1098, et seq.

In the case of Charleston, S. C. Min. & Mfg. Co. v. American Agr. Chemical Co., 126 Tenn., 18, on page 30, 150 S. W., 1143, on page 1146, it is said:

"Abandonment, or waiver, as a rule, is a question of intention, and is generally one of fact, or of mixed law and fact; but it has been held that the conduct of the lessee would raise a presumption of abandonment as a matter of law. In Cyc., vol. 7, p. 739, it is said:

" 'As a general rule, the question whether or not there has been an abandonment by the lessee of his rights under

the lease, is regarded as one of fact, although a failure to work or drill, or continue explorations for varying periods, controlled to some extent by the terms of the particular lease, has been held in some cases to raise a presumption of abandonment as a matter of law.' ''

■ We further find that at the time the bill in this cause was filed the Tennessee Barium Corporation was in default under the contract in the payment of $2,600.00 past due as minimum royalties. The complainants do not offer to pay this amount when the Tennessee Barium Corporation unquestionably owed it and therefore are in no position to ask any relief in a Court of Equity.

■ We further find that the lease sued upon, which is an Exhibit to the original bill, was not an exclusive lease and under it the lessee did not bind itself to mine any ore and that, although it is not signed by the lessee, the lessee did accept it and pay the $400 cash payment. We further find that the lease executed by the defendant York to the defendant Wolf River Corporation was a valid lease, executed in good faith after the forfeiture of the lease sued on, and that there was no fraud in connection with the execution of same. As far as the defendant Wolf River Corporation is concerned the complainants cannot maintain a suit in equity for unliquidated damages against it unless such suit is based upon some fraud or conspiracy and the complainants have failed to establish this as a fact. See Varno v. Tindall, 164 Tenn., 642, on page 645, 51 S. W. (2d), 502.

This suit must therefore be considered as a suit against the defendant York for damages for a breach of contract. Having found that the defendant York rightfully declared a forfeiture of the lease contract it necessarily results that the Chancellor was correct in dismissing the bill.

■ The question of the right of the complainants to bring this suit as stockholders of the dissolved corporation is raised by the second assignment of error. Referring to this briefly, we find that as a matter of fact the charter of the Tennessee Barium Corporation had, at the time the lease was executed by York to the Wolf River Corporation, been revoked by the Secretary of State, and that it did not exist as a corporation and that the complainants, under Section 3757 of the Code, did, as stockholders and directors of the dissolved corporation, have a right to maintain a suit to recover alleged assets of the Company.

Section 3757 of the Code is as follows:

''The officers and directors of said corporation in charge of its business and property at the time of such dissolution shall hold the assets thereof as trustees for the bene-. fit of the creditors and stockholders of the corporation, unless other persons are appointed for that purpose by said corporation or a court of competent jurisdiction; and such trustees shall have power to collect the debts due the corporation, sell such property of the corporation as may be necessary to pay its debts, and distribute the remaining assets, after the payment of debts and necessary expenses of administration, among the stockholders; and all suits necessary and proper to be brought in order to effect a settlement of the affairs of said corporation may be brought by said trustees in the name of the corporation, and no suit pending on behalf of or against said corporation at the time of the surrender of its charter in the manner herein provided shall, abate because of such surrender, but may be prosecuted to final judgment or decree. In the case of any corporation dissolved by expiration of the time limited in its charter, said officers and directors of such corporation shall hold the assets as

trustees, and shall liquidate the business of the corporation, in the same manner as herein provided in the case of corporations surrendering their charters."

Had the defendant York known of the forfeiture of the Charter of the lessee he would have been justified in executing a second lease. After the revocation of its charter the complainants as stockholders and directors could have done nothing but wind up the corporate business. We are therefore of the opinion that complainants had a right to maintain this suit as stockholders and directors of the dissolved corporation for the use and benefit of any creditors and all the stockholders, but that the lease having been forfeited they cannot recover in this cause.

It results therefore that the decree of the Chancellor dismissing the bill is affirmed and the appellants will pay the costs of the cause.

Affirmed.

Crownover, P. J., and Felts, J., concur.