**OLD FARM BAKERY, INC.,**
Plaintiff/Appellant,

v.

**MAXWELL ASSOCIATES,**
Defendant/Appellee.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 18, 1993.

Permission to Appeal Denied by
Supreme Court Feb. 14, 1994.

Harlan Dodson, III, Dodson, Parker & Behm, Nashville, for plaintiff/appellant.

Peter H. Curry, Boult, Cummings, Conners & Berry, Nashville, for defendant/appellee.

### OPINION

CANTRELL, Judge.

This is a dispute over a commercial real estate lease. The lessee contends that the lessor reentered the premises without giving the proper notices called for in the lease. The lessor contends that the lessee abandoned the lease or, in the alternative, the lessee waived the right to notice. We hold

that the lessee waived the right to notice. We, therefore, affirm the judgment of the court below.

### I.

On July 30, 1990, Old Farm Bakery, Inc., leased a building adjacent to a motel in Williamson County. The premises, described in the lease as "the restaurant portion of the building," was to be used for the operation of a restaurant and catering business. The lessor, Maxwell Associates, owned the motel, and the lease provisions show that the restaurant operation was important to the motel business.

The lease was for an initial term of one year but could be renewed four times for one year periods at the option of the lessee. The lease named certain things as defaults which would give the lessor the right to recover the premises by legal action or by reentering. Specifically, the following events amounted to a default: (1) failure to pay any rent due for five days after written notice from the lessor that the rent was unpaid; (2) failure to perform any other covenant, condition, or requirement of the lease for ten days after written notice from the lessor; and (3) failure to cure any breach of the operating standards set forth in the lease within ten days after written notice from the lessor.

The lease prohibited the lessee from assigning or subletting the lease without the prior written consent of the lessor and provided that the lessor's consent would not be unreasonably withheld. Also, the lessor retained the right to terminate the lease at any time by giving thirty days written notice and by paying the lessee $35,000.

After enjoying a successful start to its operation, the lessee exercised its option to continue the lease for another year. By October of 1991, however, the lessee notified the lessor that the business could not succeed and requested permission to sell the business as a going concern. The lessor replied that it would consider the matter but reserved the right to approve or disapprove the transfer. On October 28, 1991, the lessee notified the

lessor that the business was closed and requested the right to leave its equipment on the premises while seeking a new operator. The letter also contained a notice that the lessee would not pay the November rent or any rent thereafter.

The next day the lessee notified the lessor that the lessee had found a person who would run the restaurant with a Chinese-based menu. The prospective tenant also requested, through the lessee, that she be allowed to delete any breakfast service. The lessee requested approval of the transfer. On November 1, 1991, the principal officers of the two parties conferred by telephone, and Mr. Myers, the general partner of the lessor, told Mr. Lipman, his counterpart at Old Farm Bakery, that a Chinese restaurant on the premises was entirely unacceptable.[1]

On November 4, 1991, Mr. Myers notified Mr. Lipman in writing that the lessee had abandoned the property and that the lessor would take possession of the building. The lessor proceeded to do so.

The lessor had been negotiating for a year and a half to sell the property to Shoney's, Inc. In October of 1991, the lessor had executed a contract of sale whereby Shoney's, Inc., would become the purchaser for a price of $300,000. Although Shoney's, Inc., agreed to the general proposition, there were certain contingencies in the contract that were not satisfied until the spring of 1992. The transaction finally closed in June of 1992.

### II.

The lessee disputes the chancellor's conclusion that the acts of the lessee amounted to an abandonment of the lease. Passing beyond that, the lessee also insists that the lessor breached the lease by reentering the premises and by excluding the lessee therefrom without giving the written notices required by the lease. According to the lessee, the lessor's actions amounted to an unauthorized termination of the lease, and the lessee

---

1. Although the evidence on this point is controverted, the chancellor resolved the credibility issue in favor of Mr. Myers.

seeks the $35,000 payment called for in the lease.

#### a. Abandonment

■ In the recent case of *Jaffe v. Bolton*, 817 S.W.2d 19 (Tenn.App.1991), this court held that "[t]o constitute abandonment of the leased premises there must be an absolute relinquishment of the premises by the tenant evidenced by an act and an intent to abandon." *Id.* at 27. While the question of abandonment involves the intent of the lessee and is usually a question of fact, *Charleston, S.C., Mining & Mfg. Co. v. American Agr. Chemical Co.*, 126 Tenn. 18, 30, 150 S.W. 1143, 1146 (1911), to which the presumption of correctness would attach, Tenn.R.App.Proc. 13(d), we think the evidence preponderates against that finding in this case. The rent on the premises was paid through October of 1991 and, although the lessee had ceased operations, that fact alone does not amount to an abandonment of the lease. *See Jaffe*, 817 S.W.2d at 27. It is true that the lessee had notified the lessor that it would not pay the November rent or any rent thereafter, but this statement was coupled with the expressed intention to find another tenant to take over the lease. The intent to assign the lease is itself inconsistent with an intent to abandon the lease. Thus, we think the chancellor erroneously concluded that the lessee had abandoned the lease.

#### b. The Notice Provisions

■ The lease contained provisions that certain acts on the part of the lessee would be considered defaults if they continued for a period of time after the lessor notified the lessee in writing that the acts were occurring. With respect to one of the acts mentioned in the lease—the failure to pay rent—the common law of this state also requires that the lessor make a formal, timely demand for the rent before the lease may be terminated. *Smith v. Holt*, 29 Tenn.App. 31, 37, 193 S.W.2d 100, 102 (1945). But, the law does not require a lessor to go through the formalities when to do so would be an idle gesture, *Barnett v. Dooley*, 186 Tenn. 611, 616, 212 S.W.2d 598, 600 (1948), or when the formal demand had been waived by the lease or by the acts of the parties. *Morrison v.*

*Smith*, 757 S.W.2d 678, 681 (Tenn.App.1988); *Smith v. Holt*, 29 Tenn.App. at 37, 193 S.W.2d at 102.

The cases in this state are not at all clear in the area of waiving formal demand for rent as a prerequisite to terminating the lease. In *Elder v. Epperson*, 173 Tenn. 219, 116 S.W.2d 1015 (1938), the tenant held the premises under a written lease providing that if the tenant failed to pay the rent for a period of thirty days after it became due the lessor could declare the lease at an end. Failing to pay the rent due on October 1, the tenant filed a petition in bankruptcy on November 1 and wrote the lessor a letter notifying her that the rent would not be paid. The court said:

> We find that the demand for payment was obviated by the fact that on the day the rent was payable lessee filed a petition in bankruptcy and through her attorney notified the lessor that the rent would not be paid. The lease provided that in case of default in payment of rent in thirty days the lessor could declare the lease at an end and take possession of the property at once. That provision of the lease gave the lessor the right to terminate it upon the lessee's failure to pay the rent. The agreement of the parties operated to end the term upon non-payment of rent without the ceremony preceeding re-entry and forfeiture.

173 Tenn. at 223, 116 S.W.2d 1017.

In *Barnett v. Dooley*, 186 Tenn. 611, 212 S.W.2d 598 (1948), the Supreme Court commented on *Elder* and seemed to place more emphasis on the fact that the tenant in *Elder* had filed a petition in bankruptcy making a formal demand for the rent an idle gesture. *Barnett*, 186 Tenn. at 616, 212 S.W.2d at 600. In *Arnold v. Lemond*, 192 Tenn. 366, 369, 241 S.W.2d 430, 432 (1951), the Supreme Court repeated the distinction drawn in *Barnett.*

■ We do not, however, read these two cases as standing for the proposition that bankruptcy is the only fact which will amount to a waiver of the common law demand requirements or the notice requirements in a written lease. The key factor missing from *Barnett* and *Arnold* which appeared in *Elder*, is notice from the lessee that no more rent would be paid. We think that fact alone is

sufficient to waive the requirement that the lessor notify the lessee that the rent is unpaid or appear and make a formal demand for it. Thus, when the lessee failed to pay the rent on November 1, 1991, in accordance with the notice on October 28, 1991, that the restaurant was closed and that no more rent would be paid, the lessor had the right to reenter without giving formal notice that the rent was unpaid.

### III.

Assuming we are correct in our assessment of the legal relationship of the parties after November 1, 1991, the lessee no longer had the right to assign the lease, and the lessor's refusal to approve the assignment is immaterial. Thus, we do not reach the question of whether the refusal was reasonable.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Williamson County for any further proceedings necessary. Tax the costs on appeal to the appellant.

TODD, P.J., and WILLIAM H. INMAN, Senior Judge, concur.