COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

April 14, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| KENNETH C. QUARLES, | ) | C/A NO. 03A01-9708-CH-00370 |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | HAMILTON COUNTY CHANCERY COURT |
| | ) | |
| | ) | |
| | ) | |
| JOHN RONALD SHOEMAKER and | ) | |
| NANCY CAROL SHOEMAKER, | ) | |
| | ) | HONORABLE R. VANN OWENS, |
| Defendants-Appellants. | ) | CHANCELLOR |


For Appellants

BRIAN M. HOUSE
Weems & House
Chattanooga, Tennessee

For Appellee

RONALD D. GORSLINE
Chambliss, Bahner & Stophel,
  P.C.
Chattanooga, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                              Susano, J.

This dispute arose out of a lease of commercial property by the plaintiff, Kenneth C. Quarles ("Quarles"), to the defendants, John Ronald Shoemaker and his wife, Nancy Carol Shoemaker ("the Shoemakers"). Quarles filed suit alleging that the Shoemakers had breached the lease agreement by failing to pay rent. The Shoemakers denied liability, claiming that Quarles had constructively evicted them from the leased premises. Following a bench trial, the court found that the Shoemakers had abandoned the lease and that Quarles was entitled to damages of $9,123.47. The Shoemakers appealed, raising one issue for our consideration:

> Did the trial court err in failing to find
> that there had been a constructive eviction
> in this case?

I

In October, 1994, the parties executed a lease of the subject commercial property for a term of one year. Shortly thereafter, they extended the lease for two additional years. The lease requires that the Shoemakers pay rent of $700 per month, due on the first day of each month.

The Shoemakers opened a dry cleaning business in the leased premises. By late 1995, the business was experiencing financial difficulties, and the Shoemakers were forced to lay off their employees and cease operations. Mr. Shoemaker began looking for someone to take over the lease, and he and a business associate incorporated a new dry cleaning business in early

2

January, 1996. The new business never occupied the leased premises.

The Shoemakers failed to pay the rent due in January, 1996, or in any month thereafter. Later that same January, Quarles' property manager, G.A. Bennett ("Bennett"), received a phone call from the Shoemakers' attorney, who stated that his clients, in order to avoid bankruptcy, wanted to terminate the lease and settle their obligation for $1,500. Bennett subsequently received a letter to the same effect, but Quarles did not accept the Shoemakers' offer.

On January 25, 1996, Bennett and Quarles drove by the leased property and observed two men removing some of the Shoemakers' equipment. When approached by Quarles and his property manager, the men agreed to leave the remaining equipment until Bennett and Quarles could speak with Mr. Shoemaker or his attorney. Shortly thereafter, Bennett and Quarles had the locks changed and blocked the entrance to the building with a car. The parties exchanged correspondence, but they failed to resolve their dispute. The Shoemakers ultimately vacated the premises altogether. Bennett took steps to re-lease the property, but it essentially remained vacant from February, 1996 through January, 1997. Quarles filed this action in May, 1996.

Following a bench trial, the trial court found that

> there [was] no request on the part of Mr.
> Shoemaker or his partner or his corporation
> to say, hey, we are keeping this lease, we
> are going to stay in the business. While

3

> there was no unequivocal renunciation of the
> interest in the ownership of the lease,...
> the conduct itself combined with all the
> circumstances does, in the Court's opinion,
> constitute an abandonment.

Accordingly, the court found that Quarles was entitled to unpaid rent and other damages totaling $9,123.47.

II

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are correct. Rule 13(d), T.R.A.P. We must honor this presumption unless we find that the evidence preponderates against the trial court's findings. *Id.; Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993); *Old Farm Bakery, Inc. v. Maxwell Assoc.*, 872 S.W.2d 682, 684 (Tenn.App. 1993). The trial court's conclusions of law, however, are not afforded the same deference. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

Our *de novo* review is also subject to the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn.App. 1991).

III

4

Although the Shoemakers' argument focuses on the theory of constructive eviction, we must first examine the basis for the trial court's decision -- abandonment of the leased premises.

This court has held that "[t]o constitute abandonment of the leased premises there must be an absolute relinquishment of the premises by the tenant evidenced by an act and an intent to abandon." *Jaffe v. Bolton*, 817 S.W.2d 19, 27 (Tenn.App. 1991); *Old Farm Bakery, Inc. v. Maxwell Assoc.*, 872 S.W.2d 682, 684 (Tenn.App. 1993). The issue of abandonment involves the intent of the lessee and is generally a question of fact. *Id.; see also Charleston, S.C., Mining & Mfg. Co. v. American Agric. Chem. Co.*, 126 Tenn. 18, 30, 150 S.W. 1143, 1146 (1911). The intent of a lessee is to be ascertained from his or her conduct and statements in light of the surrounding circumstances. *McNeil Real Estate Management, Inc. v. Seiler*, C/A No. 03A01-9503-CV-00097, 1995 WL 420008, *7 (Tenn.App., E.S., filed July 17, 1995).

The concept of abandonment is examined in some detail in Tennessee Jurisprudence:

> Abandonment acquiesced in by the landlord amounts to a surrender, and is a restoration of the landlord's occupancy. Abandonment of the lease -- that is, the leaving of the premises with the intention not to return -- or the relinquishment by the lessee of his rights under the lease, without intention to resume them, may therefore be treated by the landlord as a termination of the lease.... The abandonment of possession by the tenant will not work a surrender of the premises, unless it is assented to by the lessor, and such acceptance must be shown by word or acts, such, for example, as entry into possession. *The lessee cannot surrender*

5

> *premises leased to him before the expiration
> of the term, so as to absolve himself from
> paying rent, without the consent of the
> lessor, and the abandonment of the premises
> with notice will not exonerate the lessee
> from paying the rent unless the lessor
> assents.*

17 TENN.JUR. *Landlord and Tenant* § 29 (1994)(emphasis added); *see also **Charleston, S.C., Mining & Mfg. Co.**,* 126 Tenn. at 29.

It is also important to note that, upon the abandonment of the leased premises by the tenant, the landlord is under a duty to mitigate damages. ***Jaffe***, 817 S.W.2d at 26 (citing ***Hailey v. Cunningham***, 654 S.W.2d 392 (Tenn. 1983)).

IV

After reviewing the record in this case, we cannot say that the evidence preponderates against the trial court's finding that the Shoemakers' actions amounted to an abandonment of the leased premises. There are numerous circumstances evidencing the Shoemakers' "relinquishment of the premises," ***Jaffe***, 817 S.W.2d at 27, including the following: the failure to pay rent; the cessation of operations at the dry cleaning business on the premises; the removal of equipment from the premises; the formation of a new dry cleaning business that did not take over payments under the lease, and never occupied the leased premises; the statement of the Shoemakers' attorney that his clients would probably have to file for bankruptcy if they were not let out of the lease; and the Shoemakers' failure to communicate to Quarles,

6

directly or through their attorney, any desire to continue the lease arrangement.

We recognize that there are opinions of this court holding, under the facts of those cases, that circumstances similar to those set forth in the preceding paragraph were not sufficient to show an abandonment. *See* **Old Farm Bakery, Inc.**, 872 S.W.2d at 684 (holding that no abandonment occurred where lessee was current on rent, but had ceased operations on the premises and had expressed its intention to stop paying rent and find another tenant to take over the lease); and **Jaffe**, 817 S.W.2d at 27 (finding no intent to abandon where tenants "took no steps to abandon the premises" other than offering to relinquish the premises in exchange for payment for the cost of improvements thereto). In other cases, however, an abandonment has been found; for instance, in the **McNeil Real Estate Management** case, this Court found that an abandonment had occurred where the tenants closed their shop on the leased premises, removed their equipment and merchandise, and turned their keys in to the landlord so that the premises could be shown to prospective tenants. *See* **McNeil Real Estate Management, Inc.**, 1995 WL 420008 at *7. In the instant case, we believe that the totality of the Shoemakers' conduct and statements, considered in light of the surrounding circumstances, evidences an intent to abandon the leased premises. **Id.**

We therefore hold that the evidence does not preponderate against the trial court's finding that the Shoemakers' actions amounted to an abandonment. Rule 13(d),

7

T.R.A.P.; *see Old Farm Bakery, Inc.*, 872 S.W.2d at 684. To the extent that the trial court's finding of an intent to abandon the leased premises was influenced by its assessment of the credibility of the witnesses, such determinations are, as noted earlier, entitled to great weight. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn.App. 1991). Accordingly, we find that Quarles was justified in re-taking possession of the premises, and that, by the same token, he did not constructively evict the Shoemakers. At no time did Quarles consent to a surrender of the premises and waive his right to collect rent for the remaining term of the lease, and his actions in securing the property may fairly be construed as an effort on his part to secure the unoccupied premises and mitigate damages upon the Shoemakers' breach and abandonment of the lease.

In light of this conclusion, it is not necessary to address further the Shoemakers' issue regarding constructive eviction; nor must we review the appropriateness of the amount of damages awarded by the trial court, since that amount is not specifically challenged by the Shoemakers on this appeal.

V

It therefore results that the decision of the trial court is affirmed. Costs on appeal are taxed to the appellants and their surety. This case is remanded to the trial court for the enforcement of its judgment and the collection of costs assessed there, all pursuant to applicable law.

8

_____
Charles D. Susano, Jr., J.

CONCUR:

_____
Houston M. Goddard, P.J.

_____
Herschel P. Franks, J.