IN THE COURT OF APPEALS

AT KNOXVILLE

FILED

August 17, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| JAMES ODOM, SR., | ) | C/A NO. 03A01-9710-CV-00480 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | APPEAL AS OF RIGHT FROM THE |
| | ) | HAMILTON COUNTY CIRCUIT COURT |
| | ) | |
| | ) | |
| | ) | |
| CITY OF CHATTANOOGA, TENNESSEE, | ) | |
| | ) | HONORABLE L. MARIE WILLIAMS, |
| Defendant-Appellee. | ) | JUDGE |


For Appellant

ROBERT D. BRADSHAW
Jenkins & Bradshaw, P.C.
Chattanooga, Tennessee

For Appellee

LAWRENCE W. KELLY
PHILLIP A. NOBLETT
Chattanooga, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                                    Susano, J.

The plaintiff, James Odom, Sr. ("Odom"), sued the City of Chattanooga ("the City") under the Tennessee Governmental Tort Liability Act ("GTLA"),[1] seeking damages for injuries suffered in the course of his employment with the City's Department of Public Works. Odom alleges that he suffered a back and wrist injury as a result of his extended use of a jackhammer and the performance of other strenuous labor without the aid of proper equipment. Following a bench trial, the trial court found in favor of the City and dismissed the case. Odom appealed, raising issues that present the following questions for our review:

> 1. Does the evidence preponderate against the trial court's finding that the plaintiff failed to prove that the City violated various training provisions and the general duty clause of the Tennessee Occupational Safety and Health Act of 1972?
>
> 2. Does the evidence preponderate against the trial court's finding that the plaintiff failed to prove that the City violated its Personnel Ordinances?
>
> 3. Was the City's decision to place its limited number of backhoes on certain projects to the exclusion of others a discretionary function so as to preserve the City's immunity from suit based on the plaintiff's claim that he was injured because he was doing work that should have been performed by a backhoe?

I. *Standard of Review*

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial court's factual findings are

---

[1]T.C.A. § 29-20-101, *et seq.*

correct.  Rule 13(d), T.R.A.P.  We must honor this presumption unless we find that the evidence preponderates against those findings.  *Id.; Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993); *Old Farm Bakery, Inc. v. Maxwell Assoc.*, 872 S.W.2d 682, 684 (Tenn.App. 1993).  The trial court's conclusions of law, however, are not accorded the same deference.  *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993).

Our *de novo* review is tempered by the well-established principle that the trial court is in the best position to assess the credibility of the witnesses; accordingly, such determinations are entitled to great weight on appeal. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn.App. 1991).

II.  *Facts*

At the time of the events in question -- March 11 through 24, 1994 -- Odom was employed by the City as a "Laborer III" on a street maintenance crew.  Among other things, Odom's crew was assigned to clean up behind a milling machine, which was used to cut up old asphalt in areas designated for repaving.  In addition to broken pieces of pavement, the milling machine generally would leave a small margin of asphalt next to the concrete curbs at the edge of the street.  The record indicates that a backhoe with a front-end loader ("backhoe") was usually, but not always, available to assist in scraping up the asphalt left behind by the milling machine.  The crew would then use a

3

jackhammer to loosen any remaining pieces of asphalt that had not been scraped up by the backhoe and to remove the margin of asphalt along the curb. Finally, a worker would shovel the asphalt into the backhoe, which would then be used to load the debris onto a truck.

From March 14 through March 24, 1994, Odom's crew did not have the use of a backhoe. Thus, Odom and his co-workers were forced to use jackhammers to loosen most of the asphalt, and shovels to load the broken asphalt into the truck. It was and is Odom's contention that his crew was deprived of a backhoe as punishment for their slow work on the preceding Friday, March 11. Odom contends that George Maffett, a general foreman in the City's street maintenance department, had decided that the men were engaged in a "work slowdown" on that date. Odom testified that his direct supervisor, Gerald Johnson, informed the crew that they were being punished because of their slow work. Johnson testified that Maffett had stated on March 11 that the crew was not working fast enough. In addition, Johnson testified that Maffett told him that a backhoe was not available for Odom's crew. Maffett also supposedly told Johnson that the crew did not need a backhoe. Johnson also testified that Maffett may have made a statement to the effect that if the men could not work without a backhoe, "that they just won't have one at all."

Maffett, meanwhile, denied that he had punished the crew by depriving it of a backhoe. Maffett testified that such equipment was not always available for each job, and that decisions regarding the allocation of equipment, although

4

sometimes left to him, were generally made by his own supervisor, Paul Nation. Nation, the assistant superintendent in charge of street maintenance for the City, testified that Odom's crew had not been provided a backhoe either because none were available, or because no one was available to operate it. He testified that the City owned three backhoes; there is evidence in the record indicating that on most if not all of the dates in question, one of the backhoes was in the shop, and the other two were being used by other crews.[2]

Odom initially testified that he had been required to use a jackhammer for approximately eight hours a day on March 14, 15, 16, 17, 18, 21, 22, 23, and 24. On cross examination, however, he admitted that he had not worked on March 18, and that his work on March 14 and 15 had not required the use of a jackhammer. He also stated that he had only worked about an hour and a half on March 24 before reporting the injury to his back.

During treatment for his back injury, Odom was also diagnosed with carpal tunnel syndrome. These conditions necessitated extensive treatment, including an operation and physical therapy. According to Odom, he continues to have extensive limitations on the use of his hand and back, and is unable to perform his normal job duties. Odom filed this action for damages against the City, alleging that the City's negligence in failing to provide him a safe place to work and the proper equipment to carry out his duties had proximately caused his

[2]Nation's testimony indicates that the only date within the relevant time frame on which the backhoes were not being used by other crews was March 18, 1994. Odom testified, however, that he did not work on that date.

injuries.  The case proceeded to trial without a jury.  Following the close of all the proof, the trial court found, in pertinent part, as follows:

> Numerous repaving jobs and street repair operations were being performed by the City of Chattanooga in various locations in March of 1994.
>
> The personnel on each job do not necessarily have a backhoe/front-end loader available to them for use on each job.
>
> Decisions concerning what equipment will be used by what crew were made by Gerald Johnson, George Maffet or Paul Nation, all of whom were in the supervisory chain above Mr. Odom.
>
> At the time complained of, the machinery Mr. Odom contends should have been available for the crew he worked on was being used on other jobs or in maintenance and was not available to the crew on which Mr. Odom was working.
>
> The plaintiff has not carried the burden of proof that any absence of availability of equipment to his crew was because of punishment for a work slow-down.
>
> The plaintiff has not carried the burden of proof to show the jack hammer use by Mr. Odom was in violation of OSHA or TOSHA.
>
> The plaintiff has not proved fault on the part of the defendant.
>
> *    *    *
>
> The Court finds the allocation of the equipment for use by crews at various spots in Chattanooga for the repaving or repair of roads was a discretionary function and, accordingly, the defendant is immune from suit.
>
> The plaintiff has not proven there is any basis for removal of immunity in this case....

6

The trial court thus dismissed the case, and Odom appealed.  Odom

summarizes his argument on appeal as follows:

> Because the City of Chattanooga violated its
> own City Code in not training it safety
> officers and employees in OSHA/TOSHA
> requirements and the risks associated with
> jackhammer use, in not taking measures to
> abate the risk of serious personal injury
> associated with Mr. Odom's jackhammer use as
> an employee of the City of Chattanooga, and
> in disciplining the crew on which Mr. Odom
> was working through subjecting them to
> abusive working conditions, rather than
> following the City Code's provisions for
> discipline, the City of Chattanooga must be
> found to have committed three omissions/acts
> that constitute fault for which there is no
> immunity under the Governmental Tort
> Liability Act....

III.  *Analysis*

We first turn to Odom's dual contentions that the City

was negligent in failing to properly train its supervisors and

laborers, and in failing to abate a known hazard, *i.e.*, the risk

of injury from the use of a jackhammer.  In this context, Odom

relies upon various provisions of Tennessee's Occupational Safety

and Health Act of 1972 ("TOSHA")[3] regarding safety training that

have been incorporated into the City's Code.[4]  He also cites

TOSHA's "general duty clause" -- codified at T.C.A. § 50-3-

105(1)[5] -- which has also been incorporated into the Code.  In

---

[3]*See* T.C.A. § 50-3-101, *et seq.*

[4]*See* CHATTANOOGA, TENN., CODE § 2-271, *et seq.*

[5]T.C.A. § 50-3-105(1) provides that "[e]ach employer shall furnish to each of their employees conditions of employment and a place of employment free from recognized hazards that are causing or are likely to cause death or serious injury or harm to their employees."  The City's Code contains a similar provision regarding "known or recognized hazards" but allows the employer "a reasonable period of time to correct any such hazards" once it becomes aware of them.  *See* CHATTANOOGA, TENN., CODE § 2-274.

support of his position, Odom introduced, among other things, the testimony of Dr. Tyler Kress, who opined that the City had not complied with OSHA's[6] training requirements with regard to the safe operation of jackhammers and the recognition of carpal tunnel syndrome. Dr. Kress also testified that Odom's work pattern was in violation of the general duty clause.

We note that it was apparently Dr. Kress' understanding that Odom had essentially operated a jackhammer continuously for seven work days -- an assumption that is in conflict with Odom's own testimony, as pointed out above. Dr. Kress also admitted that OSHA had yet to promulgate any regulations or guidelines regarding repetitive-motion injuries or the relationship between the use of vibrating tools and carpal tunnel syndrome. Furthermore, Tracy Clark, an employee of the City responsible for OSHA/TOSHA compliance, testified that as of March of 1994, no OHSA/TOSHA standards regarding jackhammer use had been put into effect. Clark's testimony was reinforced by that of James Alsobrook, who works for the Tennessee Department of Labor in the area of TOSHA compliance. Alsobrook also testified that he had never applied the general duty clause to the use of a jackhammer.

With regard to Odom's arguments concerning the City's alleged violations of various training provisions and the general duty clause, it is clear that the trial court found that Odom had failed to prove essential elements of his claim, *i.e.*, that the jackhammer had in fact been used improperly and/or that *improper* use was the cause of Odom's injuries. In so finding, the trial

---

[6]Occupational Safety and Health Act of 1970, 29 U.S.C. § 651, *et seq.*

8

court accredited testimony elicited by the City to the effect that no applicable standards or regulations existed, and that the City thus had not failed to comply with OSHA/TOSHA or its own Code. With deference to the trial court's credibility determinations, *Massengale*, 915 S.W.2d at 819, we cannot say that the evidence preponderates against its finding that Odom failed to prove its cause of action predicated on the training provisions and the general duty clause.

We reach a similar conclusion regarding Odom's contention that the trial court erred in failing to find negligence in the City's alleged violation of various "Personnel Ordinances" contained within its Code. In this connection, Odom argues that the City ignored applicable disciplinary procedures and instead subjected Odom's crew to abusive working conditions as a form of punishment. However, the trial court specifically found that Odom had "not carried the burden of proof that any absence of availability of equipment to his crew was because of punishment for a work slowdown." In so holding, the trial court obviously accredited the testimony of Maffett and Nation, who maintained that the unavailability of the equipment was not intended as punishment, but was simply because the equipment had been assigned to other, higher-priority jobs or was undergoing maintenance at the time. We again note that the trial court was in the best position to make such credibility determinations, *Massengale,* 915 S.W.2d at 819; in light of this consideration, and the substantial evidence in the record which supports the trial court's findings, we cannot say that the evidence preponderates otherwise.

9

Since the trial court found no negligence with respect to the City's duties under TOSHA, OSHA, or its Personnel Ordinances, it did not address whether such negligence, if proven, would result in a removal of immunity under the GTLA; nor do we.

With respect to Odom's third issue, the trial court concluded that "the allocation of the equipment for use by crews at various spots in Chattanooga for the repaving or repair of roads was a discretionary function and, accordingly, the defendant is immune from suit."  T.C.A. § 29-20-205, found within the GTLA, provides, in pertinent part, as follows:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury:
>
> (1) Arises out of the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused....

As stated by the Supreme Court,

> ...decisions that rise to the level of planning or policy-making are considered discretionary acts which do not give rise to tort liability, while decisions that are merely operational are not considered discretionary acts and, therefore, do not give rise to immunity.
>
> *     *     *
>
> A consideration of the decision-making process, as well as the factors influencing a particular decision, will often reveal whether that decision is to be viewed as planning or operational.... [Planning, *i.e.,*

10

> discretionary] decisions often result from
> assessing priorities; *allocating resources*;
> developing policies; or establishing plans,
> specifications, or schedules.

***Bowers by Bowers v. City of Chattanooga***, 826 S.W.2d 427, 430-31

(Tenn. 1992). (Emphasis Added). By the same token, the Supreme

Court recently noted in another opinion that "[d]ecisions that

include the allocation of limited resources among competing needs

do not need interference from the courts, absent clear guidance

from the legislature to the contrary." ***Helton v. Knox County,***

***Tennessee***, 922 S.W.2d 877, 887 (Tenn. 1996).

Upon review of the evidence in this case, we are of the

opinion that the decision regarding whether a backhoe would be

provided to Odom's crew was a discretionary one. It necessarily

involved "the allocation of resources" among competing jobs of

various priorities. *See* ***Helton***, 922 S.W.2d at 887, and ***Bowers***,

826 S.W.2d at 431. Thus, the City did not lose its immunity for

injuries suffered by Odom as a result of the fact that his crew

did not have a backhoe to perform their assigned tasks.

IV. *Conclusion*

In summary, we hold that the evidence does not

preponderate against the trial court's findings regarding the

plaintiff's failure to carry his burden of proof. We also hold

that the trial court correctly determined that the City is immune

from liability arising out of its discretionary decisions

regarding the allocation of the equipment in question.

11

Accordingly, the decision of the trial court is affirmed.  Costs on appeal are taxed to the appellant.  This case is remanded to the trial court for the collection of costs assessed there, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Herschel P. Franks, J.


_____
William H. Inman, Sr.J.