# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
July 18, 2019 Session

## DENITA MCMAHAN V. CITY OF CLEVELAND, TENNESSEE

**Appeal from the Circuit Court for Bradley County**
**No. V-14-096          J. Michael Sharp, Judge**

_____

### No. E2018-01719-COA-R3-CV

_____

In this action brought under the Governmental Tort Liability Act, the plaintiff sought damages from the City of Cleveland for injuries received when she fell after tripping on a raised, cracked and uneven section of a public sidewalk. In pertinent part, the plaintiff alleged that the city's immunity under the Act should be removed based on constructive notice because the city created the dangerous condition by planting trees along the sidewalk in the 1990s and roots from those trees caused the unsafe condition. Alternatively, the plaintiff asserted that immunity should be removed under the common occurrence theory of constructive notice because the tree roots caused numerous and similar defects in other sections of the city's sidewalks. Following a bench trial, the trial court found that the city did not have actual or constructive notice of the alleged defect in the sidewalk and held that the city was immune from liability under Tennessee Code Annotated § 29-20-203(b). This appeal followed. Because the evidence does not preponderate against the trial judge's finding that the plaintiff failed to prove that the city had actual or constructive notice of the alleged defect in the sidewalk where she tripped and fell, we hold that immunity under the GTLA was not removed and affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which D. MICHAEL SWINEY, C.J. and THOMAS R. FRIERSON II, J., joined.

Franklin H. Chancey, Cleveland, Tennessee, for the appellant, Denita McMahan.

Ronald D. Wells, Chattanooga, Tennessee, for the appellee, City of Cleveland.

**OPINION**

On February 21, 2013, Denita McMahan ("Plaintiff") tripped and fell while walking on the public sidewalk as she was leaving Octavia's Hair Salon (the "Salon"),[1] in Cleveland, Tennessee. Plaintiff had been visiting the Salon at this location about once every two weeks for approximately one year. It was a clear day, and Plaintiff was wearing tennis shoes when she tripped on the sidewalk and fell onto her right side. Believing that she only sustained contusions on the right side of her body, Plaintiff went home immediately after the fall, but she went to the emergency room that night due to pain and discomfort. A few days later, Plaintiff had a CT scan that showed two fractured ribs.

On February 14, 2014, Plaintiff commenced this action against the City of Cleveland (the "City"). In an amended complaint, Plaintiff alleged her injuries were caused by the negligence of the City in failing "to maintain the Defendant's property in a safe condition or by the Defendant's failure to warn Plaintiff of the existence of a hazardous condition on or about February 21, 2013."

In its answer, the City admitted that Plaintiff reported the incident but denied that the incident occurred for the reasons alleged by Plaintiff. The City denied that it failed to properly maintain the sidewalk and denied breaching any duty owed. The City also claimed immunity under the Tennessee Governmental Tort Liability Act (the "GTLA"), Tenn. Code Ann. § 29-20-203, asserting that it had no actual or constructive notice of the alleged defect in the sidewalk.

The case was tried in a bench trial on June 7, 2018. Three witnesses testified at trial: Plaintiff; Lamotta McMahan, Plaintiff's husband; and Tommy Myers, the Director of Public Works for the City of Cleveland.[2] Plaintiff testified that although she had been to the Salon many times in the past, she never noticed the sidewalk being raised, and she had not tripped, fallen, or had any problem with the sidewalk during her previous visits to the Salon. She described the section that caused her to fall as "significantly raised" from other sections with numerous cracks which she could have seen if she had been looking down. She also stated that this section of the sidewalk, and all sidewalks in the downtown area, were lined by mature trees.

---

[1] Octavia's Hair Salon is located about 150 feet from the entrance of City Hall.

[2] Plaintiff also introduced into evidence the deposition of her primary care provider, nurse practitioner Jesus Melendez.

Plaintiff testified that the fall caused her to sustain severe injuries, including pain and suffering, physical and emotional distress, loss of enjoyment of life, as well as the loss of her job. Plaintiff testified that she had worked on the assembly line for Whirlpool for 26 years prior to this incident. She said she was out of work for one week, went back for three days after which she took family medical leave for almost two years because she was unable to perform her job on the assembly line at Whirlpool. She never went back. Her husband corroborated her testimony in all respects of which he had personal knowledge.

Tommy Myers, the Director of Public Works for the City, testified that he supervises the people responsible for working on the sidewalks. He testified that numerous trees were planted throughout the City in the 1990s, and the tree roots have caused some areas of the sidewalks to be raised; however, there had been no previous complaints regarding the sidewalk where Plaintiff fell. He further explained that his staff makes "periodic sweeps" of the downtown area, checking sidewalks for any problems. In particular, he testified that his staff conducted sweeps/inspections before major downtown events in the three years prior to Plaintiff's fall. Specifically, he stated these sweeps/inspections included the area where Plaintiff fell, and that section of the sidewalk was never identified as a problem area.

The trial court entered an order on August 29, 2018, finding in pertinent part:

Tommy Myers is the Director of Public Works for the City of Cleveland. Mr. Myers testified that he is the individual who employs people who are responsible to work on the sidewalks. He is the individual who oversees the City of Cleveland's sidewalks. Mr. Myers testified that due to the fact that numerous trees were planted in the 1990's [sic], the tree roots have proven to be problematic in that the tree roots have caused problems with the City's sidewalks, causing some areas of the sidewalks to be raised. Mr. Myers testified that when the City is notified that they make every effort to take care of any known problems as soon as possible. He testified that he has his staff make "periodic sweeps" of the downtown area, checking the sidewalks for any problems that might cause an individual to fall. Mr. Myers testified that after the injury to Mrs. McMahan, the City repaired the sidewalk in front of the hair salon where Mrs. McMahan fell. Mr. Myers testified that he believes the sidewalk was raised more than one-half inch where Mrs. McMahan fell, and that the [rise] in the sidewalk area was, in his opinion, a potential hazard. However, Mr. Myers testified that there was never any complaints of any kind by anyone pertaining to the sidewalk located on First Street at or near the hair salon where Mrs. McMahan fell. Mr. Myers testified that neither he nor anyone on his staff had ever been put on notice of any problems with this area of the sidewalk. Mr. Myers testified that his staff made "regular general sweeps" of all the City

sidewalk areas which includes the City sidewalk in front of the hair salon where Mrs. McMahan was injured. Mr. Myers testified that the City always addresses the problems as they are brought to their attention and/or as they become aware that there is or might be a problem.

Based on the above findings and other evidence in the record, the trial court ruled that the GTLA governed the case and held that even if Mr. Myers' testimony established the condition on the sidewalk was considered a defective, unsafe or dangerous condition, Plaintiff failed to show the City had either actual or constructive notice of any defective, unsafe or dangerous condition. Thus, Plaintiff failed to establish the requisite elements to remove immunity from Defendant pursuant to Tenn. Code Ann. § 29-20-203. The court also ruled that she had not proven her medical expenses were reasonable and necessary by expert proof as required by Tennessee law, and she had not proven that she is unable to work, or that she lacks the ability to continue to be employed and to enjoy life. This appeal followed.

## ISSUE

Plaintiff raises two issues, but we have determined that the dispositive issue is whether the evidence preponderates against the trial court's finding that the City did not have actual or constructive notice of a defect in the sidewalk where Plaintiff tripped and fell.[3]

## STANDARD OF REVIEW

Because this is an appeal from a decision made by the trial court following a bench trial, the standard in Tenn. R. App. P. 13(d) governs our review. This rule contains different standards of review for reviewing a trial court's decisions regarding factual questions and legal questions. *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 424 (Tenn. Ct. App. 2005).

We review a trial court's findings of fact following a bench trial de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We review the trial court's conclusions of law de novo with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson Cty.*, 340 S.W.3d 352, 360 (Tenn. 2011).

---

[3] Plaintiff also contends the trial court erred in excluding the testimony of Plaintiff's nurse practitioner after finding the testimony failed to prove Plaintiff's medical treatment for injuries sustained from her fall was both reasonable and necessary. Because we have held the City is immune from liability, this issue is moot.

For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *See Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000) (citing *Austin v. City of Memphis*, 684 S.W.2d 624, 634 (Tenn. Ct. App. 1984)); *Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). We will also give great weight to a trial court's factual findings that rest on determinations of credibility and weight of oral testimony. *See Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)); *B & G Const., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000) (citing *Quarles v. Shoemaker*, 978 S.W.2d 551, 552–53 (Tenn. Ct. App. 1998)).

## ANALYSIS

Governmental entities are immune from suit, except when immunity has been removed by statute. *See* Tenn. Code Ann. § 29-20-201. In cases brought pursuant to the GTLA, "[b]efore proceeding in an action against a governmental entity, the threshold issue of waiver of governmental immunity must be addressed." *Brown v. Hamilton Cty.*, 126 S.W.3d 43, 46 (Tenn. Ct. App. 2003). Relevant to this case, Tenn. Code Ann. § 29-20-203 provides as follows:

(a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.

(b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved in addition to the procedural notice required by § 29-20-302 [repealed].

If the contention is one of actual notice, the operative questions are what did the City know and when did the City know it. *See Alexander v. City of Murfreesboro*, No. M2010-00367-COA-R3-CV, 2011 WL 882441, at *3 (Tenn. Ct. App. Mar. 14, 2011) ("As to notice, the appropriate inquiry is what did the City know, or what should it have known, about the condition of the South Rutherford Boulevard on October 12, 2004, the date of the Alexander accident."). If the contention is one of constructive notice, the operative questions are what should the City have known and when should the City have known it. *See id.*

Actual notice has been described as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." *Kirby v. Macon Cty.*, 892 S.W.2d 403,

- 5 -

409 (Tenn. 1994) (quoting *Texas Co. v. Aycock*, 227 S.W.2d 41, 46 (Tenn. 1950)). In contrast, constructive notice is described as "information or knowledge of a fact imputed by law to a person . . . because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." *Id.* (quoting *Black's Law Dictionary*, 1062 (6th ed. 1990)).

"A plaintiff can establish constructive notice one of three ways." *Merrell v. City of Memphis*, No. W2013-00948-COA-R3CV, 2014 WL 173411, at *5 (Tenn. Ct. App. Jan. 16, 2014). Two of the methods of proving constructive notice are at issue here. One, "a plaintiff may demonstrate that the owner or operator of the premises caused or created the condition." *Id.* (citing *Sanders v. State*, 783 S.W.2d 948, 951 (Tenn. Ct. App. 1989)). The other means is "by proving that 'a pattern of conduct, recurring incident, or general continuing condition' caused the dangerous condition," which is known as the "common occurrence" theory. *Id.* (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 765–66 (Tenn. 2004)).

With regard to the first means of proving constructive notice, Plaintiff contends the City had notice because the roots of the trees it planted along the sidewalks in the 1990s caused some of the sidewalks in the downtown area to be raised or cracked and uneven. Stated another way, Plaintiff asserts that the act of planting the trees combined with the location of the hazardous condition is enough to impute notice and remove immunity. The fallacy with this contention is that Plaintiff produced no evidence that the raised or cracked and uneven defect in the sidewalk where she tripped and fell was caused by the growth of a tree root.

When a court considers a GTLA claim arising from an alleged dangerous or defective condition, we are required to determine whether the governmental entity had notice of the specific defective or dangerous condition alleged to have caused the injury. *See Fowler v. City of Memphis*, 514 S.W.3d 732, 738 (Tenn. Ct. App. 2016).

As we explained in *Fowler v. City of Memphis* in more detail:

When considering [the plaintiff's] claim through the lens of a dangerous or defective condition under Tennessee Code Annotated Sections 29-20-203 and -204, it is clear that [the defendant] is entitled to summary judgment. As an initial matter, we note that the GTLA "requires notice of the actual defective or dangerous condition alleged to have caused the loss." *Champlin v. Metro. Gov't Of Nashville*, No. M2007-02158-COA-R3-CV, 2009 WL 1065937, at *5 (Tenn. Ct. App. Apr. 20, 2009). As such, for this claim we consider only the notice given to [the defendant] regarding the dangerous condition of the particular water meter at issue. *See Kirby v. Macon Cty.*, 892 S.W.2d 403, 410 (Tenn. 1994) (considering only the notice to the county regarding the "particular bridge" at issue); *Mosley v.*

- 6 -

*McCanless*, 207 S.W.3d 247, 253 (Tenn. Ct. App. 2006) (framing the issue as "[w]hether a particular site is defective, unsafe, or dangerous for purposes of waiving governmental immunity") (emphasis added) (quoting *Helton v. Knox County, TN*, 922 S.W.2d 877, 882 (Tenn. 1996) (affirming dismissal of action because bridge was not "defective, unsafe, or dangerous condition," rather than on the issue of notice)); *Champlin*, 2009 WL 1065937, at *5 (holding that a prior sidewalk inventory: (1) noting that many sidewalks did not comply with federal law did not constitute constructive notice that any sidewalk was dangerous or defective; and (2) noting cracks in the particular sidewalk at issue did "not provide notice of a dangerous, defective or unsafe condition"); *Denton v. Hahn*, No. M2003-00342-COA-R3-CV, 2004 WL 2083711, at *12 (Tenn. Ct. App. Sept. 16, 2004) (holding that a home owners association had no actual or constructive notice of a dangerous condition allegedly caused by settling on a particular piece of property, despite general knowledge that settling had occurred in buildings throughout the complex); *Smith v. Castner-Knott Dry Goods Co.*, No. 01A01-9512-CV-00554, 1997 WL 203605, at *2 (Tenn. Ct. App. Apr. 25, 1997) ("[T]he store personnel were not on constructive notice of the condition of these tiles even though they were aware that other types of mirrored tiles had become dislodged in other locations . . . .").

*Id.* at 738–39. Therefore, we consider only whether the City had actual or constructive notice of a danger or defect in the particular section of the sidewalk where Plaintiff tripped and fell, as distinguished from the City's general knowledge that other areas of the sidewalks owned and maintained by the City were raised and uneven. *See id.* Having reviewed the record, there is no evidence that the alleged defect that caused Plaintiff to trip and fall was caused by the growth of a tree root. Therefore, the mere fact that the growth of tree roots caused defects in sidewalks in other areas of town fails to prove the City had constructive notice of a defect where Plaintiff tripped and fell.

Plaintiff also contends the City had constructive notice of the defect where she tripped and fell because the defective condition occurs often enough throughout the City that the City was put on constructive notice of its existence. "[T]o find constructive notice under the common occurrence theory, the plaintiff must show that the dangerous condition occurred in 'the same approximate location and in such a frequent manner, that the happening of the condition was foreseeable by the defendants.'" *Fowler*, 514 S.W.3d at 740 (quoting *Merrell*, 2014 WL 173411, at *7).

The common occurrence theory was first recognized in Tennessee by our Supreme Court in *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004). As explained in *Blair*, the Court reasoned that a property owner is on constructive notice of a dangerous condition when the condition occurs regularly, placing a duty on the property owner to take reasonable steps to fix the "commonly occurring dangerous condition." *Id.* at 766.

- 7 -

Courts applying the common occurrence theory look for evidence concerning whether the dangerous condition previously occurred at the same place or near where the plaintiff was injured. *See, e.g.*, *Tinsley v. Wal-Mart Stores, Inc.*, 155 F. App'x 196, 198 (6th Cir. 2005) (affirming the grant of summary judgment to defendant because plaintiff presented no evidence that spills occurred regularly where he fell and rejecting plaintiff's argument that the court "should consider the entire floor of [the store] as the relevant location for the purposes of [a constructive notice] analysis"); *Martin v. Wal-Mart Stores, Inc.*, 159 F. App'x 626, 629–30 (6th Cir. 2005) (affirming the grant of summary judgment to defendant store and noting that "[a] history of leaks and spills in other departments could not have put [the store] on notice of water accumulating in the health and beauty aids department"); *Ferguson v. Wal-Mart Stores E., L.P.*, No 2:10-CV-245, 2011 WL 3739157, at *5 (E.D. Tenn. Aug. 24, 2011) (denying summary judgment for defendant based on evidence of the recurring condition of slippery floors during inclement weather in the aisle of the store where plaintiff fell and evidence of the leaky roof over the aisle where plaintiff fell).

The Director of Public Works for the City testified that he assigned employees to conduct periodic sweeps of the downtown area to identify any hazards, such as the one-half inch rise in the sidewalk where Plaintiff tripped and fell. He further stated that if any hazard or defect was noted, it was promptly repaired. He also testified that no one had identified or observed a potential hazard in the sidewalk where Plaintiff tripped and fell during any of the sweeps, and there had been no complaints by anyone of any kind pertaining to the section of sidewalk where Plaintiff tripped and fell. Significantly, Plaintiff presented no evidence to rebut the Director's testimony. Moreover, she introduced no evidence to establish that the dangerous condition had commonly occurred at the same place or near where she tripped and fell. *See Tinsley*, 155 F. App'x at 198; *see also Martin*, 159 F. App'x at 629–30.

The trial court made the specific finding of fact that Plaintiff failed to meet her burden of proof to show that the City had actual notice or constructive notice of the alleged defect. We review a trial court's finding of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Having reviewed the record, we find the evidence does not preponderate against this finding. Additionally, we find the evidence in this record is insufficient to establish that the dangerous condition previously occurred at the same place or near where Plaintiff was injured. *See Tinsley*, 155 F. App'x at 198; *see also Martin*, 159 F. App'x at 629–30. Therefore, the trial court correctly determined that the City is immune from liability because Plaintiff failed to show that it had either actual or constructive notice of a defect in the sidewalk where Plaintiff tripped and fell.

**IN CONCLUSION**

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant/plaintiff, Denita McMahan.

_____
FRANK G. CLEMENT JR., P.J., M.S.